Edward MOSES and Susan Moses, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

CITICORP MORTGAGE, INC. and Citicorp, Defendants.

No. 97 CV 837(NG).

United States District Court, E.D. New York.

Nov. 26, 1997.

Roger W. Kirby, Daniel Hume, Kaufman, Malchman, Kirby & Squire, LLP, New York, NY, for Plaintiffs.

Thomas J. Kavaler, Jonathan R. Donnellan, Cahill, Gordon, & Reindel, New York, NY, for Defendants.

## OPINION AND ORDER

GERSHON, District Judge.

In February 1997, this proposed class action was filed against defendants Citicorp Mortgage, Inc. ("CMI") and Citicorp. Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Now pending before the court are both the motion to dismiss and plaintiffs' responsive motion to correct the caption.

## MOTION TO CORRECT THE CAPTION

In response to defendants' argument that the complaint should be dismissed because plaintiffs have no standing, plaintiffs have moved to correct the caption. It is undisputed that Edward and Susan Moses, who are the sellers of the residential real estate involved in the transaction that is at issue in this case, should not have been listed as plaintiffs. Instead, Allen and Sharon Schneider, who borrowed money in order to buy the property, are the proper plaintiffs. Plaintiff's counsel represents that the names of Edward and Susan Moses, rather than Allen and Sharon Schneider, were inserted in the caption of the complaint through inadvertence. Although defendants oppose the motion, their motion to dismiss is devoted primarily to arguing that, even had the complaint named the Schneiders as plaintiffs, it should be dismissed. Defendants therefore will not be prejudiced by the naming of the Schneiders as plaintiffs in the complaint. The motion to amend the caption is accordingly granted, and the caption of the case is hereby amended to substitute Allen and Sharon Schneider as plaintiffs in place of Edward and Susan Moses. Throughout this opinion, any reference to "plaintiffs" is a reference to the Schneiders.

## MOTION TO DISMISS

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). For purposes of a motion to dismiss, the allegations of the complaint must be taken at face value. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1971).

## Allegations of the Complaint

The complaint alleges the following facts pertinent to both the named plaintiffs and the members of the putative class [1]: Defendants, who are lenders in mortgage transactions, obtain mortgage business primarily from referrals by independent mortgage brokers. Plaintiffs and other members of the proposed class, as borrowers, pay mortgage brokers a fee for procuring mortgage loans for them from lenders, such as defendants. Mortgage brokers who work with defendants receive a fee not only from the borrowers, but also from defendants. And, based upon "side agreements and understandings" with mortgage brokers, defendants pay mortgage brokers "premium" payments if the brokers agree to inflate their customers' interest rates and loan terms. As a result of those agreements and understandings, the mortgage brokers "did not advise plaintiffs or the class of the actual interest rates and loan terms they were approved for, but instead advised the plaintiffs and class members that they had been approved at interest rates and points which were higher than the actual rates [defendants were] prepared to charge." Consequently, without knowing that defendants were prepared to approve them for loans on more favorable terms, plaintiffs and proposed class members signed loan papers "at above-market interest rates and points charges which had been inflated to accommodate the 'premiums' [defendants were] paying the mortgage brokers."

As to the named plaintiffs, the complaint alleges the following: Plaintiffs needed a home mortgage and hired IPI Financial Services ("IPI"), a mortgage broker, to find a mortgage loan. They agreed to pay IPI a $125 application fee. IPI then sent plaintiffs' mortgage loan application to defendants, who approved the application. At plaintiffs' loan closing in February 1997, plaintiffs signed papers for a mortgage loan from defendants in the net amount of $90,000. Plaintiffs paid the application fee of $125 to IPI, as well as an underwriting fee of $226. In addition, defendants paid to IPI $1913.40. The complaint describes that $1913.40 payment as duplicative of the $125 application, or origination, fee paid by plaintiffs. Finally, the complaint alleges that

> [n]either IPI nor [defendants] ever disclosed to plaintiffs, and [plaintiffs did] not know, that the [$1913.40 payment] was actually going to their mortgage broker for its role in inducing plaintiffs to sign for a Citicorp mortgage loan at an interest rate above the rate which [defendants] had told IPI it would require to make the loan to them.

The complaint charges that the premium payments paid by defendants to mortgage brokers are not made in response to any actual services rendered and that, "[i]n fact, such payments by [defendants] are kickbacks made solely for steering plaintiffs and the class members to [defendants] for loans at interest rates and points charges *higher* than those [defendants] would have otherwise required." Plaintiffs thus claim that defendants' premium payments to mortgage brokers violate 12 U.S.C. § 2607, a provision of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, and 24 C.F.R. § 3500.14 ("Regulation X") in that they constitute payments for the referral of business and duplicative payments. Plaintiffs also claim that defendants' practice of paying premiums constitutes a deceptive business practice in violation of New York General Business Law § 349. Relying on their claim that they paid higher points and/or higher monthly payments than necessary as a result of the side agreements between defendants and IPI, plaintiffs seek treble damages under 12 U.S.C.

---

1. In support of their motion to dismiss, defendants have submitted a number of materials outside the pleadings. Federal Rule of Civil Procedure 12(b) provides that "[i]f, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not ex-cluded by the court, the motion shall be treated as one for summary judgment...." FED.R.CIV.P. 12(b). The court has discretion, however, to "exclude the additional material and decide the motion on the complaint alone," *Kopec v. Coughlin*, 922 F.2d 152, 154 (2d Cir.1991) (internal

§ 2607(d)(2) [2] and damages under New York General Business Law § 349(h), as well as attorneys' fees, litigation expenses, and costs.

## RESPA and Its Implementing Regulations

The primary question raised by defendants' motion is whether the complaint states a claim under RESPA. Congress enacted RESPA in response to its finding that "significant reforms in the real estate settlement process are needed to insure that consumers ... are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). Two of the purposes of RESPA are to "effect certain changes in the settlement process for residential real estate that will result—(1) in more effective advance disclosure to home buyers and sellers of settlement costs; [and] (2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services...." 12 U.S.C. § 2601(b). Under the provisions of RESPA, "settlement services" include "the origination of a federally related mortgage loan [3] (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans)...." 12 U.S.C. § 2602(3).

12 U.S.C. § 2607 prohibits certain practices in connection with settlement services involving a federally related mortgage loan. Specifically, Section 2607(a) prohibits referral fees:

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understand-ing, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a). And Section 2607(b) prohibits splitting charges:

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b). Section 2607(c) goes on to explain that "[n]othing in this section shall be construed as prohibiting ... the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed...." 12 U.S.C. § 2607(c).

RESPA confers on the Secretary of the Department of Housing and Urban Development ("HUD") the authority to prescribe rules and regulations to achieve the purposes of the Act. See 12 U.S.C. § 2617(a). The regulation adopted by HUD to fulfill its mandate is known as Regulation X. See 24 C.F.R. § 3500 et seq. Discussing the prohibition in 12 U.S.C. § 2607(b) on a split of charges, Regulation X provides that "[a] charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates this section." 24 C.F.R. § 3500.14(c). In addition, 24 C.F.R. § 3500.14(f), addressing the prohibition in 12 U.S.C. § 2607(a) on referral fees, defines "referral" as "includ[ing] any oral or written action directed to a person which has the effect of affirmatively influenc-

---

quotations omitted). I decline to convert defendants' motion to one for summary judgment.

**2.** Section 2607(d)(2) provides that "[a]ny person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service."

**3.** The term "federally related mortgage loan" is defined under RESPA as includ[ing] any loan (other than temporary financing such as a construction loan) which—

(A) is secured by a first or subordinate lien on residential real property ... designed principally for the occupancy of from one to four families, including any such secured loan, the proceeds of which are used to prepay or pay off an existing loan secured by the same property; and

(B)(i) is made in whole or in part by any lender the deposits or accounts of which are insured by any agency of the Federal Government, or is made in whole or in part by any lender which is regulated by any agency of the Federal Government....

12 U.S.C. § 2602(1).

ing the selection by any person of a provider of a settlement service or business incident to or part of a settlement service when such person will pay for such settlement service or business...." *Id.*

**Whether the Complaint States a Claim Under RESPA**

■ The complaint alleges that defendants pay mortgage brokers "premium" payments in exchange for the brokers' agreement to inflate borrowers' interest rates and other loan terms. The complaint further alleges that plaintiffs were charged "above-market interest rates and points charges which had been inflated to accommodate the 'premiums' [defendants] [were] paying their mortgage brokers." Specifically, defendants paid IPI a $1913.40 premium "for [IPI's] role in inducing plaintiffs to sign for a Citicorp mortgage loan at an interest rate above the rate which [defendants] had told IPI it would require to make the loan to them."

The complaint thus alleges that defendants paid brokers a fee, or "premium," if brokers referred to defendants clients who would pay inflated rates. With that allegation, it states a claim that defendants violated 12 U.S.C. § 2607(a), which prohibits the payment of fees for the referral of "business incident to or a part of a real estate settlement service involving a federally related mortgage loan." *Id.*

Under the allegations of the complaint, defendants' actions were not authorized by 12 U.S.C. § 2607(c), which permits compensation for "a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed. ...." *Id.* Under 24 C.F.R. § 3500.14(g)(2), "[i]f the payment of a thing of value bears no reasonable relationship to the market value of the goods or services provided, the excess is not for services actually performed or provided." According to the complaint, the only "service" that IPI provided in exchange for the premium payment was encouraging plaintiffs to take out a loan on unnecessarily disadvantageous terms. Alleging that such "service" has no legitimate market value, plaintiffs claim that defen-

dants' payment to IPI of nearly $2,000 is not lawful under RESPA. This is sufficient to state a claim under Section 2607(a).

■ Defendants' argument that the complaint is pled inadequately because it does not expressly state that the fee does not fall within Section 2607(c) is wrong. There is no requirement that the complaint not only plead a violation of federal law but also plead that the alleged behavior does not fall within any savings provision or exception. In any event, the facts pled clearly negate the availability of Section 2607(c).

■ The complaint also states a claim under 12 U.S.C. § 2607(b). It alleges that plaintiffs paid IPI an application fee of $125 and that the $1913.40 premium paid to IPI was duplicative of the fee paid by plaintiffs. 24 C.F.R. § 3500.14(c) provides that "[a] charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates [RESPA's prohibition on splitting charges]." Since the complaint alleges that a duplicative fee was charged for the rendering of a settlement service in connection with a federally related mortgage loan, it states a claim under 12 U.S.C. § 2607(b).

■ Defendants argue that the HUD–1 statement[4] provided in conjunction with the loan in this case and the Fee Agreement between plaintiffs and IPI conclusively bar this action because each reveals plaintiffs' knowledge that defendants would pay IPI a fee. Documents integral to the complaint may be considered without converting a motion to dismiss into a motion for summary judgment. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). It is doubtful that either the HUD–1 statement or the Fee Agreement are properly considered under *Cortec*, but, in any event, defendants offer them only to show that plaintiffs had notice that a fee was paid by defendants, a fact which plaintiffs acknowledge in their complaint and which does not affect the validity of the complaint.

---

4. A HUD–1 statement, which is required under 24 C.F.R. § 3500.8(a), discloses the settlement

charges that will be assessed to the buyer and seller in a federally related mortgage transaction.

Defendants have not established that the mere disclosure of a fee eliminates a RESPA violation. Even more fundamentally, nothing in either document reveals the nature of the fee or negates plaintiffs' claim that it was an illegal fee.

Finally, I note that there are a limited number of cases that have addressed similar claims under RESPA. A variety of conclusions have been reached. *See, e.g., Barbosa v. Target Mortgage Corp.*, 968 F.Supp. 1548 (S.D.Fl.1997) (granting partial summary judgment dismissing claim that payment by lender to broker of a yield spread differential violated Section 2607); *Mentecki v. Saxon Mortgage*, No. 96–1629–A, 1997 WL 45088 (E.D.Va. Feb.7, 1997) (clarifying that the court's order in *Mentecki v. Saxon Mortgage*, 1997 WL 45088 (E.D.Va. Jan.10, 1997), which denied a motion to dismiss the claim that the payment of a yield spread premium by a lender to a broker violated RESPA, did not constitute the court's final decision with regard to the legality of yield spread premiums); *Culpepper v. Inland Mortgage Corp.*, 953 F.Supp. 367 (N.D.Ala.1997) (granting summary judgment dismissing claim that payment by lender to broker of a yield spread premium violated Section 2607(a)); *Martinez v. Weyerhaeuser Mortgage Co.*, 959 F.Supp. 1511 (S.D.Fl.1996) (denying motion for partial summary judgment seeking dismissal of claim that yield spread premium paid by lender to broker violated RESPA). Defendants rely heavily on the summary judgment decisions in *Culpepper*, 953 F.Supp. 367, and *Barbosa*, 968 F.Supp. 1548. In each of these cases, the district court based its decision to grant summary judgment for the defendants on the facts established in the record and the inferences drawn by the court from those facts. Here there has been no discovery and therefore there can be no full factual record before the court. It is thus unnecessary to address whether, if similar facts were before this court, the same inferences would be drawn.

Defendants also rely heavily on a recently issued, revised version of a special information booklet issued by HUD that RESPA requires lenders to provide to borrowers seeking to finance the purchase of residential real estate. *See* 62 FR 31982. The revised booklet advises borrowers that their mortgage broker may be paid "by the lender, you as the borrower, or both." *Id.* at 31990. The booklet also states, "Other fees such as those paid by the lender to a mortgage broker ... may be paid after closing/settlement. These fees are usually included in the interest rate or other settlement charge. They are not an additional cost to you." *Id.* at 32005.

Defendants also note that in one of a list of "illustrations" designed to provide guidance on the meaning of RESPA, Appendix B to Regulation X states that "any other fee or payment received by the mortgage broker from either the lender or the borrower arising from the initial finding transaction, including a servicing release premium or yield spread premium, is to be noted on the Good Faith Estimate. : ..." 24 C.F.R. Pt. 3500, App. B., ¶ 13.

Neither the revised special information booklet nor the illustration in Appendix B establishes that plaintiffs have failed to state a claim under RESPA. Neither document contains language authorizing lenders to pay brokers a fee for their alleged agreement to deceive borrowers into accepting loans at higher interests rates and points than the lender would otherwise be willing to offer the borrowers. Nor does the mere reference to payments from the lender to the broker mean either that HUD has sanctioned premiums of the type alleged here or that, if HUD did, it was acting in conformity with RESPA. Accordingly, defendants' reliance on them on this motion to dismiss is misplaced.

### The Claim Under New York General Business Law § 349

In addition to seeking the dismissal of plaintiffs' RESPA claims, defendants seek the dismissal of their claim for deceptive trade practices under New York General Business Law § 349. Section 349(a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce in the furnishing of any service in this state are hereby declared unlawful." N.Y.GEN.BUS.L. § 349(a). Section 349(h) further provides that "any person who has been injured ... may bring an action in his own

name to enjoin such unlawful act or practice, [or] an action to recover his actual damages." N.Y.Gen.Bus.L. § 349(h). The elements of a claim under Section 349 are that (1) the alleged practice was misleading in a material respect; and (2) the plaintiff was injured. *See Steinmetz v. Toyota Motor Credit Corp.,* 963 F.Supp. 1294, 1306 (E.D.N.Y.1997).

 ■ Defendants argue that plaintiffs have failed to allege either element with specificity. Conclusory allegations have been held to be insufficient to state a claim under Section 349. *See, e.g., Grand General Store, Inc. v. Royal Indemnity Co.,* No. 93 Civ. 3741, 1994 WL 163973, at *4, 1994 U.S. Dist. LEXIS 5251, at *11 (S.D.N.Y. April 22, 1994). In this case, however, the complaint contains more than mere conclusory allegations. It alleges that defendants had agreements with mortgage brokers, including IPI, under which plaintiffs were not advised "of the actual interest rates and loan terms they were approved for, but instead [they were] advised ... that they had been approved at interest rates and points which were higher than the actual rates [defendants were] prepared to charge." The complaint thus alleges a specific practice by defendants that is misleading in a material respect and that injured plaintiffs by requiring them to pay more than they would have had to pay if the alleged side agreements did not exist.

### Whether Plaintiffs Have Stated a Claim Against Citicorp

Defendants argue that the complaint should be dismissed with respect to Citicorp, as it fails to allege facts sufficient to establish that CMI was merely the alter ego of Citicorp. On the face of the complaint, however, plaintiffs accuse *both* Citicorp and CMI of direct participation in activity that violates RESPA. There is therefore no need at this juncture to address the alter ego theory that defendants attribute to plaintiffs.

### Whether the Mortgage Broker Should be Joined as an Indispensable Party

 ■ In addition to arguing that the complaint should be dismissed for failure to state a claim, defendants argue that it should be dismissed because plaintiffs have failed to join as a party IPI, the mortgage broker to whom defendants paid the premiums. The only argument made by defendants in this regard is that IPI is indispensable because the court must examine the relationship between plaintiffs and IPI to determine the extent of information regarding premium payments that was available to plaintiffs.

Rule 19(a) provides that an absent party, the joinder of which will not deprive the court of jurisdiction, should be joined if (1) in its absence the court cannot grant complete relief among those already parties, (2) the absent party claims an interest related to the action and is so situated that disposition of the action without that party may impair its ability to protect its interests, or (3) failing to join the absent party subjects parties already in the action to a substantial risk of double recovery or otherwise inconsistent obligations. *Arkwright–Boston Manufacturers Mutual Ins. Co. v. City of New York,* 762 F.2d 205, 208 (2d Cir.1985). Defendants have not even attempted to establish that any of the three elements set forth in Rule 19(a) exists in this case; their indispensable party argument is therefore rejected.

### CONCLUSION

Plaintiffs' motion to correct the caption is granted, and defendants' motion to dismiss the complaint is denied. Discovery is to proceed expeditiously. Any discovery disputes should be presented to the Honorable Cheryl L. Pollak, United States Magistrate Judge.

**SO ORDERED.**