**Allen and Sharon SCHNEIDER, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**CITICORP MORTGAGE, INC. and Citicorp, Defendants.**

No. 97CV837(NG)(CLP).

United States District Court, E.D. New York.

July 13, 2004.

Daniel Hume, Roger W. Kirby, Kirby, McInerney & Squire, LLP, New York, NY, for Plaintiff.

Jonathan R. Donnellan, Thomas J. Kavaler, Cahill, Gordon & Reindel LLP, New York, NY, for Defendant.

### MEMORANDUM AND ORDER

GERSHON, District Judge.

In February 1997, this proposed class action was filed against defendants Citicorp Mortgage, Inc. and Citicorp claiming violations of Section 8 of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"). Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and the court denied the motion on November 26, 1997. *Schneider v. Citicorp et al.*, 982 F.Supp. 897 (E.D.N.Y. 1997). Plaintiffs then moved for class certification. While that motion was *sub judice*, the Second Circuit issued an order granting leave to appeal the denial of class certification in a similar case, captioned *Potchin v. Prudential Home Mortgage Co. Inc.*, 1999 WL 1814612 (E.D.N.Y.1999). As counsel to the parties in *Potchin* were the same, and the controlling legal issues were identical to the case at bar, this court entered an order holding this case in abeyance pending the Court of Appeals' decision. When the parties agreed to a settlement of *Potchin* before the Court of Appeals rendered a decision, this court lifted the stay on the class certification motion. The parties then entered into negotiations which produced the settlement that is the subject of this order.

On July 23, 2003, the parties entered into a stipulation of settlement and moved pursuant to Federal Rule of Civil Procedure 23 for preliminary approval. On October 8, 2003 the court held a conference on the proposed settlement and engaged in a searching inquiry as to the fairness and reasonableness of the settlement. On November 14, 2003, the court issued an order preliminarily approving the settlement and approving the Form of Notice to the class. Defendants then issued the approved Notice Order which sets forth both the terms of the settlement and how a class member could opt out of, or object to, the settlement. By the March 16, 2004 cut-off date, eight class members had objected to, and twenty-three had opted out of, the settlement. Also on that day, the Federal Trade Commission ("FTC") was granted permission to submit a memorandum as *amicus curiae* evaluating the proposed settlement. On March 31, 2004, a hearing was held to determine whether the settlement should be approved.

The principal complaint articulated by the objectors is that the fee award is high, and the benefit to the class is slight. The FTC's position is that the settlement class should not be certified, and, alternatively, the settlement value to the class is too small to justify the settlement itself or the award of fees.

■ In deciding whether or not to approve the settlement, the court must first determine whether the proposed settlement class is proper. *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The use of a settlement class allows the parties to concede, for purposes of settlement negotiations, the propriety of a class action. The Supreme Court has expressly approved the use of this device. *See Amchem*, 521 U.S. at 619, 117 S.Ct. 2231. When considering the propriety of a settlement class, the fact of settlement is "relevant to class certification" and compels "heightened" attention to the requirements "designed to protect absentees by blocking unwarranted or overbroad class definitions." *Id.* Rule 23(a) specifies the following requirements for bringing a class action: (1) the class must be so numerous that joinder of all members is impractical, (2) there must be

questions of law ·or· fact common to the class, (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class, and (4) the representative parties must fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). For purposes of settlement, the court is satisfied that the class meets the four threshold requirements of Rule 23(a) and also the requirement of Rule 23(b)(3) that a class action be superior to other available methods for the fair and efficient adjudication of the controversy.

▆▆▆ The problematic issue in this case is the other requirement of Rule 23(b)(3), that common questions "predominate over any questions affecting only individual members." The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem,* 521 U.S. at 623, 117 S.Ct. 2231. It is a more demanding criterion than the commonality inquiry under Rule 23(a). *Id.* at 623–24, 117 S.Ct. 2231. Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof and if these issues are more substantial than the issues subject only to individualized proof. *In re Visa Check/Master-Money Antitrust Litig.,* 280 F.3d 124, 136 (2d. Cir.2001).

▆▆▆ The Class in this case is defined as follows: "all persons, for whom the computer system maintaining [defendants'] loan records indicates that (i) such person obtained a brokered mortgage loan from [defendants] during the period from February 20, 1996 through December 21, 2002 and (ii) [defendants] paid a fee to the mortgage broker who originated such loan." Settlement § A(iii). The court concludes that a settlement only class, so defined, is proper under *Amchem.* As all parties recognize, it is the questionable availability of class action relief, if the case were not settled, discussed in detail below, which is the prime reason behind the settlement. That is, the risk that plaintiffs will not be able to establish the predominance of law or fact common to the members of the class sufficient to maintain a class action to judgment is the very reason justifying settlement at this time. *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir.1974)(noting that the risk of maintaining a class action is a factor in evaluating whether to approve a class settlement). Unlike in *Amchem,* the Class here is not split between groups of currently injured and potentially injured persons, and the problem of potential conflict between plaintiff subclasses is non-existent. The Class has one overarching goal, namely, maximizing the potential recovery for those persons who paid an allegedly improper yield spread premium during the specified time period. Moreover, in this case, all class members are readily identifiable from the defendants' records as are their notice addresses; this has allowed for individual, direct notice, rather than publication notice. Therefore, the concerns of *Amchem* are not present in this action.

▆▆▆ The question then is whether or not the settlement is "fair, reasonable and adequate" as contemplated by Federal Rule of Civil Procedure 23(e). *County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1323 (2d Cir.1990). Here, the proposed settlement provides that, in exchange for a dismissal of all claims against defendants, defendants will provide each class member a certificate in the amount of one hundred dollars that may be used to reduce the closing costs associated with the obtaining of a new loan from defendants. The costs of distributing the certificates, which are auto-

matically valid as of the effective date, are to be borne by defendants, and there are no administration costs to the class members. The certificates cannot be combined, are not useable in connection with any other promotion, may not be sold or transferred through a public auction, and must be used during a two year redemption period. Defendants further agree that they will conform to the new rule proposed by HUD on July 29, 2002, at 67 Fed.Reg. 49134, and pay $659,000 in expenses and attorney's fees and $500 to each of the named plaintiffs.

 As stated by the Court of Appeals in *Grinnell Corp.*, 495 F.2d at 462, in making the fairness determination the court must:

> [E]schew any rubber stamp approval in favor of an independent evaluation ... it is not necessary that the court try the case which is before it for settlement. The court is only called upon to consider and weigh the nature of the claim, possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable.

 The factors to be considered by a district court in making a Rule 23(e) inquiry are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action throughout trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all attendant risks of litigation.

*Grinnell*, 495 F.2d at 463. In this circuit, when considering whether to approve a proposed class action settlement, "the most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." *Grinnell*, 495 F.2d at 455.

Weighing the *Grinnell* factors, the settlement in this case is approved. The shift of legal precedent during the course of this action is the dominant factor supporting settlement. In 2001, the Department of Housing and Urban Development ("HUD") issued a policy statement, *RESPA Statement of Policy 20001–1: Clarification of Statement of Policy 1999–1 Regarding Lender Payments to Mortgage Brokers*, 66 Fed.Reg. 53052 (the "2001 Policy Clarification"), stating that yield-spread premium payments, the subject of this action, were neither per se illegal or legal, but rather must be evaluated on an individual basis through the application of a two-part test prescribed by HUD. Following the issuance of the 2001 Policy Clarification, all RESPA yield spread premium class actions pending in the district courts were either dismissed or denied class certification, and those on appeal in the circuit courts resulted in either the affirmance of class action denials or holdings that RESPA yield spread premium payments did not give rise to liability.[1]

---

1. *Geraci v. Homestreet Bank,* 347 F.3d 749 (9th Cir.2003); *Hirsch v. BankAmerica Corp.,* 328 F.3d 1306 (11th Cir.2003); *Bjustrom v. Trust One Mortg. Corp.,* 322 F.3d 1201 (9th Cir.2003); *Lane v. Residential Funding Corp.,* 323 F.3d 739 (9th Cir.2003); *O'Sullivan v. Countrywide Home Loans, Inc.,* 319 F.3d 732 (5th Cir.2003); *Haug v. Bank of America N.A.,* 317 F.3d 832 (8th Cir.2003); *Krzalic v. Republic Title Co.,* 314 F.3d 875 (7th Cir.2002); *Heimmermann v. First Union Mortg. Corp.,* 305 F.3d 1257 (11th Cir.2002); *Schuetz v.*

Thus, after this court's denial of defendants' motion to dismiss, but prior to a class being certified, it became the overwhelming opinion of the courts that yield spread premium cases are not cognizable as class actions. This threw the continued viability of this action as a class action into serious doubt. Plaintiffs' counsel, highly experienced in the pursuit of class actions, have reasonably concluded that denial of class certification, with no recovery whatsoever for the Class, was the likely result here had the parties not agreed to settle. In addition, in the absence of the proposed class settlement, there is little likelihood of significant recovery to individual members of the Class. While RESPA provides for treble damages and attorneys' fees, *see* 12 U.S.C. § 2607(d), prosecution of RESPA claims on an individual basis is unlikely.

As stated by one court, "by effectively closing off class action litigation, HUD forces potentially thousands of consumers to individually litigate their claims regarding a few thousand dollars, an unlikely proposition." *Bjustrom v. Trust One Mortgage,* 178 F.Supp.2d 1183, 1195 (W.D.Wash.2001), *aff'd in part, remanded in part,* 322 F.3d 1201 (9th Cir.2003).

The court is well aware of the problems of voucher settlements such as those approved here. As stated in the declaration in support of plaintiffs' motion for settlement approval (the "Stone Declaration"), plaintiffs' counsel attempted to obtain an all-cash settlement, but defendants, recognizing that the tide had turned against plaintiffs, rejected this demand. The remote possibility of the claims in this case being brought on an individual basis (only

*Banc One Mortg. Corp,* 292 F.3d 1004 (9th Cir.2002); *Glover v. Standard Federal Bank,* 283 F.3d 953 (8th Cir.2002); *Culpepper v. Irwin Mortg. Corp.,* 253 F.3d 1324 (11th Cir. 2001); *Brazier v. Security Pacific Mortg., Inc.,* 245 F.Supp.2d 1136 (W.D.Wash.2003); *Chow v. Aegis Mortg. Corp.,* 286 F.Supp.2d 956 (N.D.Ill.2003); *Tidwell v. Homestar Real Estate Services,* 290 F.Supp.2d 729 (S.D.Miss. 2003); *Mills v. Equicredit Corp.,* 294 F.Supp.2d 903 (E.D.Mich.2003); *Barnes v. Republic Mortg. Ins. Co.,* 2003 WL 1738454 (S.D.Ga.2003); *Andrews v. Temple Inland Mortg. Corp.,* 2002 WL 31844706 (D.Minn. 2002); *Costa v. SIB Mortg. Corp.,* 210 F.R.D. 84 (S.D.N.Y.2002); *Jenkins v. Mercantile Mortg. Co.,* 231 F.Supp.2d 737 (N.D.Ill.2002); *Kolle v. SGB Corp.,* 2002 WL 31133183 (N.D.Ill.2002); *Dominguez v. Alliance Mortg. Co.,* 226 F.Supp.2d 907 (N.D.Ill.2002); *Cedeno v. Fieldstone Mortg. Co.,* 2002 WL 1592759 (N.D.Ill.2002); *Watson v. CBSK Financial Group, Inc.,* 2002 WL 598521 (N.D.Ill.2002); *LaCasse v. Washington Mut. Inc.,* 198 F.Supp2d 1255 (W.D.Wash.2002); *Empalmado v. First Franklin Financial Corp.,* 2002 WL 193411 (N.D.Ill.2002); *Thomas v. Ocwen Federal Bank FSB,* 2002 WL 99737 (N.D.Ill. 2002); *Potchin v. Prudential Home Mortg. Co. Inc.,* 1999 WL 1814612 (E.D.N.Y.1999); *Vargas v. Universal Mortg. Corp.,* 2001 WL 1545874 (N.D.Ill.2001); *Anderson v. New Di-* *mension Financial Services, L.P.,* 2001 WL 1155251 (N.D.Ill.2001); *Sims v. First Franklin Financial Corp.,* 2001 WL 1155271 (N.D.Ill.2001); *McCrillis v. WMC Mortg. Corp.,* 133 F.Supp.2d 470 (S.D.Miss.2000); *Smith v. EquiFirst Corp.,* 117 F.Sup.2d 557 (S.D.Miss.2000); *Blount v. National Lending Corp., Inc.,* 108 F.Supp.2d 666 (S.D.Miss. 2000); *Lee v. N.F. Investments, Inc.,* 2000 WL 33949850 (E.D.Mo.2000); *Yasgur v. Aegis Mortgage Corp.,* 2000 WL 33911217 (D.Minn. 2000); *In re Old Kent Mortg. Co. Yield Spread Premium Litigation,* 191 F.R.D. 155 (D.Minn. 2000); *Isara v. Community Lending, Inc.,* 2000 WL 33680237 (D.Hawai'i 2000); *Golon v. Ohio Sav. Bank,* 1999 WL 965593 (N.D.Ill. 1999); *Briggs v. Countrywide Funding Corp.,* 188 F.R.D. 645 (M.D.Ala.1999); *Hamilton v. North America Mortg. Co.,* 1999 WL 33117170 (D.Me.1999); *Brancheau v. Residential Mortg.,* 187 F.R.D. 591 (D.Minn.1999); *Levine v. North America Mortg.,* 188 F.R.D. 320 (D.Minn.1999); *Emory v. Delta Funding Corp.,* 190 F.R.D. 627 (N.D.Ga.1999); *Schmitz v. Aegis Mortg. Corp.,* 48 F.Supp.2d 877 (D.Minn.1999); *Dujanovic v. MortgaAmerica, Inc.,* 185 F.R.D. 660 (N.D.Ala. 1999); *Mulligan v. Choice Mortgage Corp., USA,* 1998 WL 544431 (D.N.H.1998); *Chandler v. Washtenaw Mortgage Co.,* 1998 WL 34007355 (M.D.Ala.1998); *Taylor v. Flagstar Bank, FSB,* 181 F.R.D. 509 (M.D.Ala.1998).

23 of the 77,870 members of the class either objected to, or opted out of, the settlement), regardless of merit, coupled with the relatively minor pecuniary benefit attendant to a successful individual litigation, supports approval of the settlement. Only 8 class members objected to the settlement. Under the unusual circumstances of this case, the settlement represents the best efforts of plaintiffs' counsel to ensure that some benefit, however limited, accrues to the Class.

The FTC opposes approval of a settlement class while acknowledging that "courts have interpreted the HUD Statement of Policy as the death knell" to claims such as those brought here. As noted above, if this settlement is not approved, there is a high likelihood that there will be no relief at all to the Class and that class members will not seek individual relief. Thus, the FTC's suggestion that the court deny approval and try to force a more favorable settlement belies the reality that the FTC itself acknowledges. The FTC identifies no prejudice to plaintiffs from the settlement. In effect, the FTC's position is that, if plaintiffs are unlikely to obtain class action relief, a proposition that it does not dispute, they should get nothing; and their attorneys should receive no compensation for years of litigation. The FTC's general concerns about voucher settlements simply do not address the unique circumstances of this case. In sum, the relatively modest relief provided by the settlement is, under these circumstances, "fair, reasonable and adequate."

The court also approves reasonable attorneys' fees in the amount of $575,518.93. Plaintiffs' counsel developed the legal theory behind this case, conducted discovery including depositions, litigated numerous discovery disputes and defeated a motion to dismiss. None of their work was compensated. Counsel for defendants are prominent and experienced lawyers who have vigorously defended the case. That this action survived dismissal is a testament to the work product of plaintiffs' counsel. In denying the motion to dismiss, which was vigorously argued, the court found that plaintiffs had articulated a viable claim. *Schneider v. Citicorp et al.*, 982 F.Supp. 897 (E.D.N.Y.1997). The court considers the commencement and prosecution of this action as entirely appropriate and finds that any implication in the objections to settlement that plaintiffs' counsel were not acting in the best interests of the Class in the bringing of the action are without merit. In addition, the settlement itself is efficient in nature, having no requirements attendant to the use of the certificates. The award will not be drawn out of a settlement pool or common fund, and, as noted by plaintiffs' counsel, the attorneys' fee and expense amount was separately negotiated and funded and does not diminish the class award.

The objections raised by the FTC to the fee award are misinformed and misguided. As FTC Commissioner Pamela Jones Harbour states in an opinion dissenting from the FTC's position in its amicus brief regarding the award of attorneys' fees: the attack on the award of fees is "uninformed as to the underlying facts" regarding "the motions made and possibly resolved; what investigations were undertaken and their results; the hours class counsel invested in this matter; or the manner and effect of counsel's investment." As the FTC had *nothing* factual upon which to base an objection to the attorneys' fees, the objection appears grounded solely on the policy statement set forth on page 18 of its amicus brief as follows: "Whether the burden of such an unwarranted fee award is born by [d]efendants' shareholders or its future customers, it constitutes an economic loss that the results achieved in this litigation cannot justify." This statement ignores

that the court's role under Rule 23 is not to protect defendants' shareholders or its future customers; defendants' interests are protected by its counsel. Rather, the court's role is to ensure that absent class members are treated fairly. In addition, the court fails to see how denying attorney's fees in this case advances the FTC's goal of enhancing consumer welfare. The consumers to be protected here are those harmed by defendants' allegedly improper use of yield spread premiums. The 2001 Policy Statement issued by HUD did not render yield spread premiums *per se* legal. A denial of fees earned by plaintiffs' counsel in attempting to obtain benefits for consumers under RESPA would accrue only to the benefit of defendants.

The requested $659,500 award for attorneys' fees and expenses includes a multiplier over counsel's lodestar of $542,722.50. Although the court believes that plaintiffs' counsel did an effective job in a situation where controlling legal precedent shifted sharply against them, in light of the concerns the court has about the likely redemption rate of the certificates, no multiplier will be applied here. Accordingly, the court reduces the award to plaintiffs' counsel to the lodestar amount of $542,722.50. The court also grants counsel's request for expenses totaling $31,796.43, as detailed in the Stone Declaration, as such expenses were necessary and reasonable.

For the foregoing reasons the settlement is approved, an award of $542,722.50 in attorney's fees is approved, as are awards of $31,796.43 in expenses and $500 for each named plaintiff. The parties are directed to submit an agreed upon form of judgment.

**SO ORDERED.**