Harvey L. TAYLOR, III and Cassaundra M. Taylor, on behalf of themselves and others similarly situated, Plaintiffs,

v.

FLAGSTAR BANK, FSB, Defendants.

No. 98–A–50–N.

United States District Court,
M.D. Alabama,
Northern Division.

July 21, 1998.

Richard H. Gill, Copeland, Franco, Screws & Gill, P.A., Montgomery, AL, C. Neal Pope, Teresa P. Tomlinson, Pope, McGlamry, Kilpatrick & Morrison, Columbus, GA, C. Knox McLaney, III, McLaney & Associates, Montgomery, AL, Angela L. Kimbrough, Parsons & Sutton, Tuscaloosa, AL, for Harvey L. Taylor, III and Cassaundra M. Taylor, individually and on behalf of all others similarly situated.

Dennis R. Bailey, Bowdy J. Brown, Rushton, Stakely, Johnston & Garrett, Montgomery, AL, for Flagstar Bank, FSB.

### *MEMORANDUM OPINION*

ALBRITTON, Chief Judge.

This is a yield spread premium case. "Yield spread premiums" are payments made by a mortgage lender to a mortgage broker on an "above par" loan brought to the lender by the broker. To be "above par" is to be above the current going rate, to be above the lowest rate that a lender will offer without charging "discount points." In crude terms, therefore, the yield spread premium is (allegedly) simply a payment made by the lender to the broker in return for the broker having brought the lender a high interest loan. *See Culpepper v. Inland Mortgage Corp.,* 132 F.3d 692, 692 (11th Cir.1998) (*"Culpepper I"*).

The Plaintiffs in this case arranged a refinance loan through a broker, paying the broker compensation for his services. They sue the Defendant—which "table-funded" the loan, i.e. financed and owned the loan from the time of closing—because the Defendant / lender paid a $400.50 yield spread premium to their broker, in addition to the brokerage fee paid by the Plaintiffs. Plaintiffs allege that this yield spread premium was an illegal kickback or illegal fee-splitting as barred by RESPA, the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* Plaintiffs believe that, through the means of the yield spread premium, their broker was 'bought off' by the lender, leaving them in the process with a higher interest rate loan than they could have gotten otherwise through the broker.

The matter is not presently before the court for a determination of liability, or for a determination of the merits of the claim. This matter is currently before the court for a decision of whether a class should be certified. The proposed class consists of borrowers whom the Plaintiffs allege were similarly situated, i.e. borrowers who paid their broker a fee, but had Flagstar also pay their broker a yield spread premium in a table-funded loan. The proposed definition of the class is:

All persons residing in the United States and its territories who, during the period of one year prior to the date of the filing of this Complaint forward, obtained a federally-related mortgage loan through a mortgage broker where the loan was table-funded by the defendant, where the borrower(s)' HUD–1 form reflects that the borrower(s) paid the broker a fee as compensation for the mortgage broker's services and where the HUD–1 also reflects that the defendant paid the mortgage broker a premium pricing fee, yield spread premium, par plus premium, or other fee in connection with the organization of the borrower(s)' loan, without identifying any service for such premium or fee.

For a number of reasons, the court declines to certify this proposed class.

## I. STANDARD FOR CLASS CERTIFICATION.

 In deciding whether to certify a class, a district court has broad discretion. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566 (11th Cir.1992). In exercising this discretion, however, a court must pay special heed to all of the requirements of Federal Rule of Civil Procedure 23. A class action may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of Federal Rule of Civil Procedure 23 have been satisfied. *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir.1984). A court must evaluate whether the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy of representation. Furthermore, the court must determine whether the action may be maintained as one of the classes under Rule 23(b). The party seeking to maintain the class action bears the burden of demonstrating all prerequisites to class certification have been satisfied. *Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1363 (11th Cir. 1984).

 As noted above, the court is not in the position of deciding the merits of this suit today. The question of class certification is a procedural one distinct from the merits of the action. *Garcia v. Gloor*, 618 F.2d 264 (5th Cir.1980), cert. den. 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981).[1] Even without deciding the merits, however, the court should nevertheless "evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a)." *General Telephone Co. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). In doing this, sometimes "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Washington*, 959 F.2d at 1570 n. 11.

## II. HISTORY.

The court cannot properly consider the issue of class certification in this case without recognizing the efforts of a number of other courts. There is both a history to class certification in yield spread premium cases, as well as a history of consideration of the merits of such cases. The intersection of those two form the basis for many of Plaintiffs' present arguments.

### The Bleak History of Class Certification.

A number of district courts have already confronted the issue of class certification in a RESPA yield spread premium case, with almost all of them soundly rejecting the idea. Eight of these decisions are from courts spread throughout the United States:

> *Conomos v. Chase Manhatta Corp.*, 1998 WL 118154 (S.D.N.Y., March 17, 1998);

> *Hinton v. First Amer. Mortgage*, 1998 WL 111668 (N.D.Ill., March 3, 1998);

> *Barboza v. Ford Consumer Fin. Co.*, 1998 WL 148832 (D.Mass., Jan.30, 1998);

> *Marinaccio v. Barnett Banks, Inc.*, 176 F.R.D. 104 (S.D.N.Y., Oct.23, 1997);

> *Moniz v. Crossland Mortgage Corp.*, 175 F.R.D. 1 (D.Mass., July 2, 1997);

> *Badio v. Accubanc Mortgage Co.*, 96–12259–RCL, (handwritten denial based on *Moniz*, D.Mass., July 2, 1997);

> *Martinez v. Weyerhaeuser Mortgage Co.*, case no. 94–1610–CIV–RYSKAMP, slip op. [959 F.Supp. 1511] (S.D.Fla., June 25, 1997);

> *Mentecki v. Saxon Mortgage, Inc.*, no. 96–1629–A, slip op. (E.D.Va., Jan. 11, 1997);

In addition to these eight, two decisions from this district have confronted class certification in a yield spread premium case. In *DuBose v. First Security Savings Bank*, no. 96–D–867–N, slip op. (M.D.Ala., Oct. 23,

---

1. The Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981).

1997), Judge De Ment adopted a recommendation of Magistrate Judge McPherson denying class certification in a RESPA yield spread premium case. *DuBose* was preceded by *Briggs v. Countrywide Funding Corp.*, no. 95–D–859–N, slip op. (M.D.Ala., Sept. 29, 1997). In that case, Judge De Ment adopted a recommendation of Magistrate Judge Coody denying class certification.

Throughout this bleak period for RESPA classes, there was only one case that constituted contrary authority. In 1995, the district court for the Northern District of Georgia certified a RESPA yield spread premium class. *McDermott v. Mercury Capital Serv.*, 1:94–cv–1524–MHS (N.D.Ga.1995). As both this district court and other district courts have observed, however, this opinion is not particularly persuasive precedent. The opinion is conclusory; the opinion fails to confront the importance of the "reasonableness" test that RESPA requires; and, even at best, the court certified a small class of 189 borrowers who had "almost identical" transactions. *See also Marinaccio*, 1997 U.S. Dist. LEXIS 16505 at *14–15 (questioning and distinguishing *McDermott* ).

Viewing the other decisions dealing with RESPA yield spread premium classes as a whole, therefore, there is much to be said for denying class certification. The overwhelming majority of the cases have been consistent in their judgment, not to mention consistent in their reasoning (but, more on that below).

*New Arguments.*

As might be expected, it is no mere coincidence that two of the cases dealing with class certification were in the Middle District. Both were brought by the same Plaintiffs' counsel that bring this case. *DuBose*, in fact, also involves one of the same defense firms, as well as the same defendant, merely by a different name. Plaintiffs insist that they are not bringing the present case merely to reargue these prior decisions, or merely to seek a decision in conflict with Judge De Ment (although they do insist his decision was incorrect). Primarily, Plaintiffs insist

that circumstances—and opinions about the merits of RESPA yield spread premium cases—have been changed by the Eleventh Circuit's decision in *Culpepper v. Inland Mortgage Corp.*[2] *Culpepper* is actually one case, but with two opinions. The first opinion, *Culpepper I*, is published as 132 F.3d 692, and was decided on January 9 of this year. The second, *Culpepper II*, is merely a slight clarification of the first. It may be found at 144 F.3d 717, as it was recently decided on June 22.

*The Eleventh Circuit's Statements.*

In *Culpepper I,* the Eleventh Circuit confronted the merits of a RESPA yield spread premium case. The district court had granted summary judgment in favor of the Defendants, finding that the yield spread premium was not an improper referral fee. 132 F.3d at 692. The district court had also dismissed the Plaintiffs' "motion for class certification without reaching the merits under Federal Rule of Civil Procedure 23." Rather, the class allegations were simply dismissed as a result of the district court's decision to grant summary judgment. *Id.* at 697.

The Eleventh Circuit reversed the actions of the district court, however, finding that "[u]nder the particular facts" of the case before them, the defendant had not established as a matter of law that the yield spread premium did not violate RESPA's referral fee prohibition. 132 F.3d at 697. The particular facts were that (1) the yield spread premium that was paid was determined by the interest rate of the loan, and not by the provision of any services, *id.* at 694; (2) the loan at issue was table-funded by the lender, so there was no sale of goods by the broker to the lender, *id.* at 694–696; (3) the only evidence before the court indicated that the compensation by the borrowers to the broker was intended to compensate the broker "fully for the work it did for the" borrowers, *id.* at 696; and (4) the broker received a yield spread premium "only when it originate[d] an above par loan," not when it merely originated any loan, *id.* at 697. In other words, a fully-paid broker received ad-

---

**2.** *DuBose* was tried to a defense verdict. Plaintiffs have filed a Rule 60(b) motion, which challenges that verdict, in part because of the *Culpep-* *per* decision. There is also a pending motion for reconsideration of the denial of class certification in *Briggs*. Neither has been ruled on.

ditional monetary payment from the lender, based simply on the above-par interest rate of the loan, and not based on the provision of any services.

A petition for rehearing, as well as a petition for rehearing en banc, were denied by the Eleventh Circuit. In doing so, however, the original panel believed it necessary to clarify some things. Primarily, the court clarified that its decision by no means determined yield spread premiums to be unlawful in all cases. Rather, such premiums can be lawful "in certain circumstances." *Culpepper II* at 718–719. Further, the finding of illegality in the first decision had been "highly dependent upon the facts in the current record." *Id.*

Again, the court emphasized these facts: (1) the loan was a "table-funded financial transaction;" (2) the Defendant had offered no evidence to "tie the yield spread premium to services provided by" the broker to the lender or the borrowers; (3) the undisputed evidence showed that the broker's services "were the same irrespective of whether the interest rate was at par or above par;" and (4) all of the evidence before the court tied the premium "only to [the broker's] referring an above par loan." *Id.* Again, a fully-paid broker received additional payment from the lender based on nothing but the referral of a high-interest loan.

In noting the particular facts, the court was also careful to point out the posture of the case. It had been decided on summary judgment. Therefore, the court's decision was merely a preliminary one, at least as far as the evidence was concerned. The Defendant's "inability to obtain judgment as a matter of law on the current record d[id] not prevent [it], on remand, from attempting to prove its case at trial." *Id.* Indeed, the Defendant could even present evidence (as it was then claiming) that "the yield spread premium also represented additional payment for [the broker's] services to" the lender and borrowers. *Id.*

In the clarifying opinion, the court made no additional reference to the class issues.

### A Clash?

Plaintiffs in this suit claim that the Eleventh Circuit's decisions in *Culpepper* make class certification much more palatable than it had previously been. They assert that the prior opinions rested on an improper 'merits' analysis. In other words, the district courts had refused to certify a class primarily because the courts believed the suits to be defective on their merits. They also assert that *Culpepper* rejected use of the "reasonableness test" upon which prior decisions had been based. In effect, Plaintiffs argue that the persuasiveness of the prior decisions rejecting class certification is simply wiped away by the decision in *Culpepper*.

### III. DISCUSSION.

The Plaintiffs have more than a puddle to jump to get from liability under RESPA, to class actions under RESPA, however. *Culpepper,* while enlightening on the issue of legality of yield spread premiums, says little about the issue of class certification. In fact, the decision actually gives a fairly good example of why class certification would be inappropriate. As is revealed in the Eleventh Circuit's analysis, and in its own characterization of its analysis, the question of whether a yield spread premium violates RESPA is a fact intensive, particularistic inquiry. Even though a plaintiff may now have a RESPA case in certain circumstances, these Plaintiffs do not have a case appropriate for class certification.

### RESPA's ad hoc Nature.

Much of Plaintiffs' arguments rest on an assumption that *Culpepper* holds that yield spread premiums are per se illegal in certain circumstances. As argued by Plaintiffs,

> every time a broker receives any form of payment from both the borrower and the lender in a table-funded transaction, there is a per se violation of RESPA where there is no evidence that the yield spread premium payment was for services rendered in addition to the services paid for by the loan origination fee.

*Plaintiffs' Reply at 9.* As *Culpepper II* points out, however, this per se illegality argument is not exactly true. A defendant may prove

"that the yield spread premium also represented additional payment" for the broker's services. 144 F.3d 717, 718–719. Yield spread premiums are not illegal in all cases, but are only illegal under the particular facts discussed in *Culpepper*.

■ RESPA remains—even in the face of interpretation by the *Culpepper* court—a rather ad hoc statute. It does not establish blanket rules regarding excessive fees, nor does it establish certain per se violations. *See Hinton*, 1998 WL 111668 at *6 ("*Culpepper* does not negate our analysis as to the lack of predominance of common issues"). In fact, the activities that RESPA prohibits are rather vaguely specified. Even after its prohibitions are specified, however, those prohibitions themselves are limited by the statute's exemptions of "payments for goods or services." *Culpepper I*, 132 F.3d at 695.

Plaintiffs invoke both of the prohibitions in RESPA in this case. These are the prohibition against kickbacks, and the prohibition against splitting charges:

**(a) Business referrals**

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

**(b) Splitting charges**

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

Both prohibitions of RESPA are limited by 12 U.S.C. § 2607(c), which proscribes in pertinent part that

Nothing in this section shall be construed as prohibiting ... (2) the payment to any person of ... compensation or other payment for goods or facilities actually furnished or for services actually performed.

There is, therefore, an interplay among the sections of 12 U.S.C. § 2607. Improper kickbacks and fee splitting are prohibited, but one cannot determine what exactly is an improper kickback or split fee, without looking to the further limitations of section (c). No payment is prohibited as long as equivalent goods and services were furnished in return. *See also* 24 CFR § 3500.14(c) ("A charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee").

The questions of RESPA become focused on whether goods or services were furnished in return; and what the value of those services may be. *See* 24 CFR § 3500.14(g)(2) ("If the payment of a thing of value bears no reasonable relationship to the market value of the goods or services provided, then the excess is not for services or goods actually performed or provided"). As HUD states, "[t]he RESPA issue is whether the total compensation paid to a broker in a particular transaction is or is not reasonably related to the value of the goods furnished or services performed." 62 Fed.Reg. 53, 912 (1997). In other words, what did the broker get? Who did he get it from? What did the broker do for this compensation? Was the total compensation unreasonable in light of the services he performed?

One district court has accurately described the position of a court in deciding a RESPA yield spread premium case:

[T]he Court agrees that payments of YSPs to brokers by lenders are not per se violations of RESPA. Instead, to determine whether the YSP payments in this case violated RESPA, the trier of fact would need to examine what services were actually performed in exchange for each of the premiums paid in each of the [thousands of] separate loans transactions which would be encompassed by the proposed class.

*Marinaccio*, 176 F.R.D. at 106–107. The test of RESPA, in sum, is transaction specific.

**Class Actions, in General.**

Plaintiffs insist, however, that a class action would be appropriate where all of the transactions were somehow known to be the exact same. That is, in fact, Plaintiff's theory in this suit—every payment of a yield

spread premium by Flagstar was a prohibited payment. Plaintiffs insist that this is so, because Flagstar table-funded the transactions, the borrowers themselves also paid the broker, and the HUD–1 form reflects no goods or services furnished by the broker to the lender. This theory is not accurate, however.

For the purposes of this discussion, the court will assume, without deciding, that the requirements of Rule 23(a) are met. Some of these are rather low hurdles to meet; the real contest is whether the requirements of a particular section of Rule 23(b) may be met. Here, Plaintiffs have sought to certify their class action under two theories: Rule 23(b)(2) and Rule 23(b)(3). Certification under Rule 23(b)(2) would simply be inappropriate on its face, given the predominance of money damages in this action. Certification under Rule 23(b)(3) would be inappropriate because common questions do not predominate, and a class action would not be superior to other methods of adjudication. *See* Fed. R.Civ.Pro. 23.

### *The Requirements of Rule 23(a).*

The court will simply assume, without deciding, that the requirements of Rule 23(a) have been met. Under Rule 23(a), a class action must satisfy four requirements to be satisfied: (1) **numerosity**—the number of injured persons must be large enough to justify treatment as a class, i.e. "joinder of all members [must be] impracticable;" (2) **commonality**—there must be "questions of law or fact common" to all the members of the class; (3) **typicality**—the "claims and defenses" of the named plaintiffs must be "typical of the claims or defenses of the class;" and (4) **adequacy of representation**—the named plaintiffs, and consequently their counsel, must be capable of "fairly and adequately" prosecuting the action. Fed.R.Civ.Pro. 23(a).

In this case, named Plaintiffs clearly have shown that a large enough class of persons harmed by the Defendant's actions exists to satisfy class treatment. Approximately 50% of Flagstar's loans contained a yield spread premium—that leads to an estimate of 35,000 class members. Given this figure, "numerosity" is satisfied with little difficulty. Even if only a small number of those fit the class

definition, a sufficient number would be present. *See Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.1986), cert. den. 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986) ("while there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'"). The court may easily assume, therefore, that numerosity is satisfied.

The court may also assume that commonality, typicality, and adequacy of representation, are all satisfied. As noted in opinions of the Eleventh Circuit and Supreme Court, these three requirements tend to merge, the real question being whether the named Plaintiffs have claims similar to the rest of the class, and can forcefully represent those interests. *See Andrews v. American Tel. & Tel. Co.*, 95 F.3d 1014, 1022–23 (11th Cir. 1996) (discussing three aspects together); *see also Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. 2364 (Commonality and typicality requirements ensure that the interests of the representative and class are "so interrelated that the interests of the class members will be fairly and adequately protected.... Those requirements ... tend to merge with the adequacy-of-representation requirement, although the latter ... also raises concerns about the competency of class counsel and conflicts of interest.").

The assumption by the court that these requirements may be satisfied, is made easier by the fact that these requirements are not, on the whole, very stringent. Courts have routinely recognized that the commonality requirement is "not high." *Morris v. Transouth Fin. Corp.*, 175 F.R.D. 694, 697 (M.D.Ala.1997). Rather, the rule only requires that there be "questions of law *or* fact common to the class." F.R.Civ.Pro. 23(a)(2) (emphasis added). It may be satisfied, therefore, even if there are factual discrepancies, and even if there are individual differences with damages. *Morris*, 175 F.R.D. at 697 (quoting *In re Workers' Compensation*, 130 F.R.D. 99, 104 (D.Minn.1990); *Cox*, 784 F.2d at 1557) ("Rule 23 does not require that all the questions of law and fact raised by the dispute be common"). Here, all of the proposed class members borrowed

from Flagstar, used a broker, and the broker received a yield spread premium. Further, there is only one nation-wide federal legal standard that need be applied, that of RES-PA. The low requirement of commonality may, therefore, be met.

 The questions of typicality and adequacy of representation are slightly more difficult. The court will assume for the sake of discussion, however, that they are met. Typicality is, again, somewhat of a low hurdle. All that is required is that "the claims . . . of the representative parties are typical of the claims . . . of the class." F.R.Civ.P. 23(a)(3). In other words, there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir.1984). A sufficient nexus is established if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory. *Id.* at 1337. As with commonality, differences in damages are not enough to deny typicality; and the differences in the claims themselves must be something more than minimally different. *Id.* (allowing class certification because claims of named representative were not "markedly different than the claims of the rest of the class"). These Plaintiffs apparently raise the same concerns as the class they seek to represent. The court may assume that they meet the typicality requirement.

 Under the adequacy of representation requirement, representative plaintiffs must fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). The adequate representation inquiry involves questions of whether the Plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation; and of whether the Plaintiffs have interests antagonistic to those of the rest of the class. *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985). Here, there is no real question that the Plaintiffs' counsel are well qualified. They have handled numerous RESPA suits before, as well as numerous complex class actions. Further, it appears that the named representatives are interested, and zealous in their willingness to prosecute this action. Again, the court may assume that the adequacy of representation requirement is met.

 In sum, the court will assume—without deciding—that the requirements of Rule 23(a) are met. This procedure is taken in part because the requirements of Rule 23(a) are themselves largely overshadowed by the more rigorous requirements of Rule 23(b)(3). *See Amchem Products, Inc. v. Windsor*, —— U.S. ——, 117 S.Ct. 2231, 2243, 138 L.Ed.2d 689 (1997) ("The Third Circuit recognized that Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions"). Just because the court can reject class certification by looking to the requirements of Rule 23(b), it would not also hold that Rule 23(a) cannot be met. Indeed, caution is in order lest the court establish high thresholds for the Rule 23(a) requirements that "might have repercussions for class actions very different from this case." *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 627 (3rd Cir.1996), aff'd. —— U.S. ——, 117 S.Ct. 2231, 138 L.Ed.2d 689 (discussing commonality requirement).[3] The best way to exercise this

---

**3.** At least one decision by a district court has denied class certification because of concerns over typicality and adequacy of representation. That court also based its decision on failure to meet the predominance requirement of Rule 23(b)(3). In *Barboza,* the District Court for the District of Massachusetts stated:

The detailed circumstances of each borrower-broker transaction are critically material to the claims presented. In short, there is no "typical" case, and it follows that the prerequisite established by Rule 23(a)(3) is not met. It further follows in this case that the named

plaintiffs are not adequate representatives under Rule 23(a)(4) for absent class members who have different kinds of claims or different prospects of success on whatever claims they have.

1998 WL 148832 at *5. The court immediately followed this with an additional denial under Rule 23(b)(3). The *Barboza* court may have believed it necessary to analyze typicality and adequacy of representation separately because it was dealing with a settlement class. Settlement classes do not have to meet the Rule 23(b)(3) requirement of manageability.

caution is to assume without deciding, that the requirements of Rule 23(a) are met.

### Rule 23(b)(2).

█ Just because the court may assume that Plaintiffs in this case can satisfy the requirements of Rule 23(a) does not mean that the action may be certified as a class action. In addition to those requirements, the named plaintiffs must also show that their purported action fits into one of the categories recognized by Rule 23(b). *Hudson v. Delta Air Lines*, 90 F.3d 451 (11th Cir.1996), cert. den. —— U.S. ——, 117 S.Ct. 1082, 137 L.Ed.2d 217 (1997). As noted above, the real contest in this case is whether the Plaintiffs may satisfy the requirements of Rule 23(b).

Plaintiffs have sought to increase their odds in this fight, by arguing two methods of certification—they seek certification under either Rule 23(b)(2), or under Rule 23(b)(3). Section 23(b)(3) is the section usually, and properly, invoked when a plaintiff's case seeks predominately money damages. In this case, Plaintiffs have available, and are seeking, treble damages, as well as costs and attorneys fees under RESPA. 12 U.S.C. § 2607(d). Rule 23(b)(3), therefore, is clearly the most applicable. Rule 23(b)(3) contains some rather stringent requirements, however, and numerous courts have rejected 23(b)(3) certification for yield spread premium cases before. Responding to this trouble, Plaintiffs have sought to branch out a bit; to fit this case under Rule 23(b)(2). This expansion is due to be denied, however. Rule 23(b)(2) certification would not be appropriate in this case.

█ Rule 23(b)(2) "permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.'" *Amchem*, —— U.S. ——, 117 S.Ct. at 2245. Plaintiffs argue that they can fall within this rule because they are seeking injunctive relief. The mere seeking of injunctive relief is not enough, however. 23(b)(2) actions are only appropriate where injunctive or declaratory relief is the primary relief sought. "As the case law makes clear, class certification under Rule 23(b)(2) is inap-

propriate where the final relief sought relates predominately to money damages." *Morris*, 175 F.R.D. at 699 (rejecting certification under 23(b)(2) in force placed insurance case); *Vaughter v. Eastern Air Lines, Inc.*, 817 F.2d 685, 690 (11th Cir.1987) ("Certainly, Rule 23(b)(2) was not applicable, as the suit seeks more than just the injunctive and declaratory relief generally available under that provision.").

█ Although (b)(2) actions may certainly be certified where damages are sought in addition to an injunction, they still may not be certified in a case like the present. In cases where such classes are certified, the "primary relief sought was an injunction." Charles Alan Wright, Arthur C. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 1760. Here, the treble damages available under RESPA may more fairly be said to predominate. The primary relief these Plaintiffs seek is money; not an injunction.

The Fifth Circuit recently considered the question of predominance in the case of *Allison v. Citgo Petroleum Corp.*, No. 96–30489, 1998 WL 244989, —— F.3d —— (5th Cir. May 15, 1998), and states persuasively why cases like the present are not appropriate for certification under (b)(2). In *Allison*, the court stated a rule that "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." *Id.* at *9, ——. "By incidental," the Fifth Circuit meant "damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." *Id.* In other words, "the recovery of incidental damages should typically be concomitant with, not merely consequential to, the injunctive or declaratory relief," and "should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances." *Id.* Incidental damages should not "introduce new and substantial legal or factual issues." *Id.* Further, such damages will "by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions." *Allison* at *9, ——.

Because of the nature of RESPA, it is impossible to determine liability without individualized findings, much less damages. Although this court would be able to determine the amount of the yield spread premium from a HUD–1 form, the court cannot determine from that form whether the yield spread premium was illegal. There is no indication on the HUD–1 form that the payments was not for goods or services. Plaintiffs have argued that this may be determined because the form does not reveal any goods or services. The court does not see where the form asks for that information, however. Because of the nature of RESPA, this is not the sort of "group" case that is properly certified under (b)(2). The damages sought—and the individualized decision-making that must accompany such damages—clearly prevent them from being "incidental" to the requested injunctive or declaratory relief in this case.

■ Further, Plaintiffs' arguments that the recovery that they seek—treble damages—is injunctive in nature is without merit. Even if the court were to construe the money as some sort of disgorgement (which it cannot because the broker is not here, and trebled damages are not disgorgement), that would not be enough. Even if disgorgement is an equitable remedy, this remedy does not qualify as injunctive relief, for purposes of Rule 23(b)(2). *Sugai Products, Inc. v. Kona Kai Farms, Inc.*, No. 978–43–SPK, 1997 WL 824022 (D.Hawai'i Nov. 19, 1997) (finding that the claim for disgorgement of profits predominates and cannot be the basis for certification under Rule 23(b)(2) because not injunctive relief). Therefore, the Plaintiffs' request for compensatory and punitive damages, whether stemming from disgorgement or not, is not the type of relief contemplated by Rule 23(b)(2) (even if it were incidental).

■ Finally, this just is not the sort of proposed class where 23(b)(2) is appropriate. 23(b)(2) was intended primarily, although not exclusively, for use in "[c]ivil rights cases against parties charged with unlawful, class-based discrimination." *Amchem,* ── U.S.

──, 117 S.Ct. at 2245.[4] Even if no longer reserved for civil rights cases, however, it is still more properly reserved for those circumstances where the cure, is more of a "group remedy," and where there is "a homogenous and cohesive group with few conflicting interests." *Allison,* 1998 WL at 244989 *8—9, ─── ───. A quick survey of Middle District cases certifying (b)(2) classes reveals that trait. It is not commercial or lending lawsuits which are properly litigated under (b)(2), but suits by a cohesive class seeking injunctive relief, usually from the state. *See, e.g., D.W. v. Poundstone,* 165 F.R.D. 661, 671 (M.D.Ala.1996) (Albritton, J.) (certifying (b)(2) class of children committed to state institutions, where class was challenging practices of state Department of Mental Health and Mental Retardation), aff'd. 113 F.3d 1214 (11th Cir.1997); *Pettco Enterprises, Inc. v. White,* 162 F.R.D. 151, 158 n. 7 (M.D.Ala.1995) (Albritton, J.) (certifying class of persons challenging state policy of not paying for damages caused by uninsured prisoners driving state vehicles; complaint sought "only prospective injunctive relief."); *Bradley v. Harrelson,* 151 F.R.D. 422, 427 (M.D.Ala.1993) (certifying class of mentally ill prisoners challenging medical services in state prisons). This case neither fits squarely within such a grouping, nor does it fit within the parameters of the law. Rule 23(b)(2) certification would be improper, and will not be considered.

### *Hybrid Class Action.*

■ As a corollary to their (b)(2) arguments, Plaintiffs have also requested that the proposed class be certified as a "hybrid class action." Hybrid class actions are actions "in which class members seek individual monetary relief, typically back pay, in addition to class-wide injunctive or declaratory relief." *Cox,* 784 F.2d at 1554. Basically, these exist to superimpose the requirements of opt-out procedures on a(b)(2) case where monetary damages are sought in addition to injunctive relief. *Id.* This is done because "the monetary relief stage of a Title VII case often

4. Certification of many Title VII cases as class actions may no longer be appropriate, given the expanded damages now made available under Title VII by the Civil Rights Act of 1991. *See Allison v. Citgo Petroleum Corp.,* 1998 WL 244989, ── F.3d ── (5th Cir., May 15, 1998).

'begins to resemble a 23(b)(3) action' " and it would be a violation of due process to bind "individual class members ... against their interests by a money judgment or settlement." *Id.*

Certification as a "hybrid class action" would also be improper in this case. Monetary relief is not being sought merely "in addition to" injunctive relief in this case. *Id.* Monetary relief *is* this case. Injunctive relief is just an aside—it may benefit future borrowers from this lender, but not the borrowers that make up the class. Their recovery will come from the treble damages. Further, the monetary relief being sought is not the type which merely grows out of the injunctive relief. It is not, for instance, the "typical[ ]" example of "back pay." *Id.* Rather, the monetary relief being sought here is separate, and predominant.

Certifying this case under 23(b)(2) is inappropriate under any circumstance, even if opt-out procedures are superimposed. Given the type of relief sought, and the type of case at issue, this case cannot be certified as a class action without meeting the strictures of Rule 23(b)(3). Indeed, although it is not binding precedent, the Fifth Circuit stated just this year that a "hybrid" class action must satisfy both Rule 23(b)(3) and Rule 23(b)(2) in any event. *Allison*, 1998 WL 244989 at *13, ——. Certification as a "hybrid" class action, is no more appropriate in this case than certification as a(b)(2) class action.

### *Rule 23(b)(3).*

This case is most appropriately analyzed under Rule 23(b)(3). Rule 23(b)(3) has been recognized as a " 'most adventuresome' innovation" in the law. *Amchem*, —— U.S. ——, 117 S.Ct. at 2245. It is "[f]ramed for situations in which 'class-action treatment is not as clearly called' for," such as where money damages are sought, and where class members must be given notice and a right to opt-out. *Id.; Allison*, 1998 WL 244989 at *8, —— ("Because it automatically provides the right of notice and opt-out to individuals who do not want their monetary claims decided in a class action, Rule 23(b)(3) is the appropriate means of class certification when monetary relief is the predominant form of relief

sought and the monetary interests of class members require enhanced procedural safeguards.").

The particular requirements of Rule 23(b)(3) are that the common questions "predominate" and that the class action procedure be "superior ... for the fair and efficient adjudication of the controversy." Factors which enter into this include (1) the interests of individuals in controlling their own case, (2) the extent of any pre-existing litigation, (3) the desirability of concentrating litigation in one forum, and (4) "the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.Pro. 23(b)(3). Alternatively stated, in order to qualify as a 23(b)(3) class, "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir.1997). The particular inquiry is " 'far more demanding' than Rule 23(a)'s commonality requirement." *Id.*, quoting *Amchem*, —— U.S. ——, 117 S.Ct. at 2249–2250 (1997).

### *Impact of Prior Precedent.*

In dealing with this case as a Rule 23(b)(3) case, the court has a wealth of help from previous decisions. Most of the cases which have rejected yield spread premium cases for treatment as class actions did so with an analysis under Rule 23(b)(3). They did so in large part because yield spread premiums, even if they can be a violation of RESPA, are no per se violation of RESPA. *Conomos*, 1998 WL 118154 at *4; *Martinez*, 959 F.Supp. at 1516 ("Contrary to plaintiff's apparent belief that the legality of yield spread differentials is an 'all or nothing' proposition, the Court finds that individual factors predominate over common issues").

The cases emphasized that the central test of a violation of RESPA is whether a fee is unreasonable in relation to the services actually performed. When viewed in this light, it is apparent that a "trier of fact would need to determine which services actually were performed by mortgage brokers in each of the

transactions encompassed by the proposed class." *Conomos,* 1998 WL 118154 at *4. Some courts have even referred to the question of whether a yield spread premium payment violates RESPA as a "unique" question "to each member of the class," and a question which "would require separate inquiry as to each plaintiff." *Mentecki,* slip op. at 4; *see also DuBose* at 9 ("This court is persuaded that to investigate Flagstar and its brokers' liability to the proposed plaintiffs, the trier of fact would need to investigate the services actually performed and the fees charged in each specific instance.").

Under this analysis, in order to properly determine whether the yield spread premium at issue is illegal, this court would have to measure the services, if any, provided by numerous brokers spread across the country. Further, the court would have to weigh these services against the amount of the fee, which itself might have to be looked at in light of the amount of the mortgage, and in light of the numerous individual characteristics of the borrower (credit history, etc.) and the loan (amount, location, etc.). Simply put, the legal test of RESPA is one which, on its face does not encourage class certification. The test is simply too focused on "reasonableness" and particular individual factors. *See Conomos,* 1998 WL 118154 at *4 ("reasonableness inquiry would require investigation into such factors as geographic market variations, the size and type of each loan, the amount of services required for the particular transaction and the mortgage broker's individual cost and expense structure.").

The court cannot decide that an illegal kickback or fee-split occurred, without looking to see exactly what services were performed, and whether those services were reasonably charged. *Moniz,* 175 F.R.D. at 4 ("in order to resolve this dispute, this Court would have to evaluate each of the 18,000 transactions at issue"); *Martinez,* 959 F.Supp. at 1516 ("Although the Court's inquiry into the nature of the transaction structure by the lender might involve common issues, the equally or more important issue of the services provided by the broker to the

borrower (and possibly the lender) would differ in each case."). Class certification is improper, simply put, largely because of the nature of the law at issue.

***Plaintiffs' Arguments Around these Precedents.***

Plaintiffs try in several ways to get around the impact of these prior decisions. The first of these has been somewhat superseded by the Eleventh Circuit's clarifying opinion in *Culpepper II.* Plaintiffs had tried to argue that a class action was appropriate because the Eleventh Circuit held yield spread premiums to constitute a per se violation of RESPA. As can be seen from the discussion of that opinion above, this argument is simply no longer viable.

Second, Plaintiffs insist that all of the decisions that have rejected class certification for a RESPA yield spread premium case have done so because those courts were improperly considering the 'merits' of the action. In response to this the court notes that a limited review of the merits is necessary to determine whether the requirements of Rule 23 are met. *Washington,* 959 F.2d at 1570 n. 11.(sometimes "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.")

In any event, however, the decisions by those courts were not the sort of 'merits' decision which the Plaintiffs condemn. A review of the cases shows that the courts were following the letter of Rule 23—the courts rejected a class action because of the simple failure of the classes to raise a predominant class issue. One of the decisions even makes a point of criticizing the plaintiffs for attempting to turn class certification into a debate over the viability of their RESPA claims. *Marinaccio,* 1997 U.S. Dist. LEXIS 16505, at *16. To some degree, that is exactly what the Plaintiffs are attempting here. They want the court to adopt a rule, which for all intents and purposes, would hold yield spread premiums to be per se illegal when a brokerage fee has been paid by the borrower. That is about the only way plaintiffs could win on class certification.[5]

---

**5.** It is interesting that the Plaintiffs in this case argue vehemently against courts looking too

closely at the merits in this case. If anything, the merits of the case appear to be fairly good. Yield

Third, Plaintiffs try to get around the lack of per se illegality by arguing that their proposed class is somehow limited so that it only includes those whose yield spread premiums clearly violate RESPA. This same argument was addressed by the district court in *Conomos*. That court, just as this court, finds the argument to be "artfully-worded," but lacking in substance. 1998 WL 118154 at *5.

The biggest problem with this argument is that somewhere—at its core—it must rest on an assumption that the conduct of the Defendant was always illegal. If it does not, it is simply a request by the Plaintiffs to ferret out every individual whose legal rights were violated by a specific yield spread premium. The court cannot do this, however, without examining each and every transaction, given the structure of RESPA. Such individualized fact-finding would be the very antithesis of a class action. *Id.* ("in order to determine if defendants never paid mortgage brokers for services actually performed, or if defendants engaged in a regular course of illegal conduct, the Court necessarily must analyze the reasonableness of the YSP paid on each loan."); *see also Marinaccio*, 997 U.S. Dist. LEXIS 16505, 97 Civ. 0662(CLB), (S.D.N.Y. 1997) ("Because payment of a YSP or other fee to a mortgage broker is not a per se [violation] of RESPA section 8, certification in this case would require analysis of each of the 6,700 transactions encompassed by the proposed class to determine whether any of the challenged YSP payments were not reasonably related to the value of the 'services actually performed.'").

Finally, at oral argument Plaintiffs' counsel argued vigorously that pre-*Culpepper* decisions are no longer valid because they turned on a factor rejected by *Culpepper*, i.e., the reasonableness of the fees paid by the broker for the services actually rendered. The court has carefully considered this argument.

True, in *Culpepper* the Eleventh Circuit reversed the district court's finding that the payment by the lender to the broker was not a prohibited referral fee because the payment was a fair market price for the loan and thus there was no excess payment left to be attributed to a referral fee under 24 C.F.R. § 3500.14(a)(2). 132 F.3d at 697. The court held that that conclusion ignored "the fact that the payment did not compensate [the lender] for any good or service. The market value test is useful only if the payment is for a good or service in the first instance ..." *Id.* But, in holding that the lender was not entitled to summary judgment, the court had pointed out that "No evidence suggest[ed] that the fee paid to the broker [by the lender] was not intended by both [the broker] and [the borrower] to compensate [the broker] fully for the work it did for the [borrower]." *Id. Culpepper II* left open for trial the possibility that the lender might prove as a defense that the yield spread premium represented additional payment for the broker's services to the lender and the borrower. 144 F.3d 717, 719.

The idea that a yield spread premium may constitute part of the broker's compensation has been anticipated by HUD. In fact, in documents that HUD prepares for consumers this possibility is mentioned. *See Buying Your Home: Settlement Costs & Helpful Info.*, 62 Fed.Reg. 31983, 31990 (Dep't of Housing & Urban Dev., June 11, 1997) ("Your mortgage broker may be paid by the lender, you as the borrower, or both."). HUD has even gone so far as to propose a rule which would presume such payments to be legal, as long as certain disclosure requirements are met. *See Real Estate Settlement Procedures Act (RESPA) Disclosure of Fees Paid to Mortgage Brokers; Proposed Rule and Notice of Proposed Information Collection Requirements*, 62 Fed.Reg. 53912, 53912 (Dep't of Housing & Urban Dev., Oct. 16, 1997) (proposing presumption of legality for indirect fees paid by lender to broker,

---

spread premiums are fairly difficult to justify in light of the Eleventh Circuit's decision in *Culpepper*. Merely because Defendant will have a difficult time defeating the Plaintiffs' claim does not mean that a class action is necessarily appropriate, however. As noted by the Northern District

of Illinois in rejecting a RESPA class certification, while *"Culpepper's* analysis may assist the [plaintiffs] in establishing liability" the case still "does not go to class certification." *Hinton*, No 96 C 5668 at 11.

where disclosed in compliance with certain rules).[6] Flagstar is allowed to defend the yield spread premiums, therefore, on the basis that they are *additional payment* for the services rendered for which the borrower also paid a brokerage fee, not payment for *additional services* to those paid for by the borrower, as contended by the Plaintiffs.

Instead of helping the Plaintiffs' case for class certification, *Culpepper* actually hurts it in emphasizing the fact that RESPA liability is highly dependent upon the facts of a particular transaction. A finder of fact will be called upon to determine whether the yield spread premium was intended to be additional payment for the broker's services to the lender and borrower and then, if so, whether there is any excess payment over the reasonable relationship of the total payment to the market value of the services provided.

Next, Plaintiffs argue that admissions made by Flagstar representatives at an earlier trial preclude the Defendant from arguing that these yield spread premiums were anything other than illegal. Even if the facts which Plaintiffs seek to prove are all true, however, it still will not be enough to certify a class. Plaintiffs argue that they can show (through the introduction of trial testimony in *DuBose*) that (1) all of the loans at issue are table-funded; (2) that all of the brokers at issue were paid a fee by the borrower; and that (3) each broker was paid a yield spread premium. Further, Plaintiffs argue that all of these facts are easily determinable from the HUD–1 form.

Plaintiffs' arguments miss a key element of the *Culpepper* decision, however. No matter what Plaintiffs can easily prove about the general contours of these transactions, Plaintiffs still cannot prove (by a class method) that none of the yield spread premiums at issue were earned through the provision of services. The Defendant might prove— maybe just in a single transaction, but perhaps in all of the transactions—that the yield spread premium "represented additional payment for [the broker's] services to" the lender and the borrowers. *Culpepper II*, 144 F.3d at 718–719.

This missing element especially becomes apparent from a close reading of Plaintiffs' summary of their own arguments. They leave out the step of whether the yield spread premium might be only part of the broker's compensation for services. Instead, Plaintiffs assume that the compensation from the borrowers was meant to pay the broker in full for his services. In their reply brief at 2, Plaintiffs argue that

> The yield spread premium paid by Defendant Flagstar to its mortgage brokers across the United States, including Plaintiffs' mortgage broker, does not compensate the mortgage broker for settlement services actually performed, because the Plaintiffs' mortgage broker and the mortgage brokers of all other loan consumers sought to be represented herein are otherwise compensated through loan origination fees or loan discount points and other such charges to the consumer.

Plaintiffs offer no way of knowing whether the compensation from the borrower was intended as *full* compensation; they simply assume that it was. This was one of the central facts of the *Culpepper* decision—all of the evidence there indicated that the fee paid by the borrowers to the broker was supposed to compensate the broker "fully for the work it did for the" borrowers. *Culpepper I*, 132 F.3d at 696. Here, that evidence or allegation from the Plaintiffs is lacking. Indeed, there is testimony from the broker in the Plaintiffs' transaction that he would have charged them more if the premium were not available in this case. *See Al Wade Affid. at p. 6–7 (I "would charge the borrower more if the wholesale mortgage lenders were not allowed to pay a service release fee"); p.8 ("by*

---

6. The proposed rule has been put on hold for now. Congress has required that HUD and the Federal Reserve Board discuss merging or blending some of the requirements of RESPA with the Truth in Lending Act. *See* Economic Growth & Reg. Paperwork Red. Act, Pub.L. 104–208, 110 Stat. 3009 § 2101 (1996). HUD and the Federal Reserve Board have just this month released a joint report to Congress discussing these issues. *See Joint Report to the Congress discussing Reform to the Truth in Lending Act and the Real Estate Settlement Procedures Act* (Dep't of Housing & Urban Dev.; Federal Reserve Board, July 1998) (http://www.federalreserve.gov/board-docs/rptcongress/tila.pdf).

*having the service release fee, the borrower was able to defray an additional $400.50 out-of-pocket expense").*

### Rule 23(b)(3) Conclusion.

The proposed class definition here would encompass those borrowers (1) who "paid the broker ... compensation," (2) and whose HUD 1 reflects that a YSP premium was paid, (3) but whose HUD 1 does not "identify[ ] any service for such premium or fee." It is not that this class is not specific enough for definition. The proposed members apparently can—as Plaintiffs argue—be easily identified using only the HUD 1. The problem with the definition is that the persons identified are not necessarily persons whose rights have been violated.

The court cannot certify a class on the mere basis that the borrower had also paid a fee. That would be tantamount to declaring that the borrower's payment was full compensation in all cases. This, of course, cannot be done. Whether the borrower's payment was intended as full compensation, or whether the yield spread premium was intended as additional compensation is an issue to be determined as to each transaction. And, if additional compensation was intended, the total compensation that is reasonable for any particular transaction varies according to numerous factors: credit history, type of loan, amount of loan, property at issue, etc.

There is simply no way of knowing from the face of the HUD 1 that the yield spread premium payment was not for services rendered. Plaintiffs have not shown the court that such services must be listed on the form. The question is not whether the form lists services, but whether services were rendered. Further, the mere fact that the borrower paid some compensation does not automatically mean that the YSP is not compensation. Indeed, there are apparently some cases where the yield spread premium constitutes all, or almost all, of the borrowers' fees—these types of deals are sometimes sold as "no point / low closing costs" loans. *Wade Affid. at 8.*

In order to find the yield spread premiums at issue illegal, the court will have to analyze each individual transaction. Were goods or services furnished? Was the compensation paid by the borrowers intended to fully compensate the broker? Was the yield spread premium intended as part of the compensation? The existence of these questions show that class analysis is not appropriate. Each individual transaction will have to be looked at on its own. *See DuBose,* slip op. at 8 (Rec. of Mag.) ("This court is persuaded that to investigate Flagstar and its brokers' liability to the proposed plaintiffs, the trier of fact would need to investigate the services actually performed and the fees charged in each specific instances.") In this situation, individual issues predominate.

If this court were to treat this case as a class action, it would have to improperly subsume all of the individual questions, questions which are directly relevant because of RESPA, and directly relevant under the analysis in *Culpepper.* This would not be fair to the class members whose cases differ on the facts; and it would improperly interfere with those members' ability to handle their own case as they see fit. Further, it would be unmanageable for the court to handle the case with that many factual questions and deviations. Treble damages, costs, and attorneys' fees are available in RESPA actions. 12 U.S.C. § 2607(d). These provide incentives, and opportunities, for individuals to prosecute their own actions. That is the superior method of adjudication of these claims.

### IV. CONCLUSION.

Class actions are intended to promote efficiency. They should "save[ ] the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion." *Falcon,* 457 U.S. at 155, 102 S.Ct. 2364. In this case, the issues are simply too disparate to ever achieve the economy that can be achieved under Rule 23. Further, any economy that could be achieved would be at the expense of accuracy and fairness. Class certification in this case is due to be DENIED.