**Pedro and Marisa COSTA, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,**

v.

**SIB MORTGAGE CORP., et al., Defendants.**

**No. 01 Civ. 7040(RLC).**

United States District Court, S.D. New York.

Oct. 2, 2002.

Kaplan Fox & Kilsheimer LLP, Frederic S. Fox, Jonathan K. Levine, Joel B. Strauss, Adam M. Walsh, of counsel, New York City, for Plaintiffs.

Kirkpatrick & Lockhart LLP, Eva M. Ciko, R. Bruce Allensworth, Irene C. Freidel, Brian M. Forbes, of counsel, New York City, for SIB Mortgage Corporation.

Lowenstein Sandler PC, Lawrence M. Rolnick, of counsel, Roseland, NJ, for Apple Mortgage Corporation.

## OPINION

CARTER, District Judge.

Plaintiffs Pedro and Marisa Costa bring this action against defendants SIB Mortgage Corporation ("SIB") and Apple Mortgage Corporation ("Apple"), alleging violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"). Presently before the court is plaintiffs' motion for class certification, filed pursuant to Rules 23(a) and (b), F.R. Civ. P. For the reasons that follow, plaintiffs' motion for class certification is denied.

## BACKGROUND

This case has its genesis in a residential mortgage loan that plaintiffs obtained, funded by defendant SIB, a mortgage lender specializing in providing mortgage loans to consumers throughout the United States, and arranged by Apple, a mortgage broker assisting consumers to obtain mortgage loans from lenders such as SIB. In the spring of 2001, plaintiffs approached an agent of Apple to secure a mortgage to finance their purchase of a single-family residence in New York City. After this initial interaction, Apple contacted SIB to be the mortgage lender in connection with plaintiffs' property purchase. At the closing on June 29, 2001, SIB presented the plaintiffs with a U.S. Department of Housing and Urban Development ("HUD") Settlement Statement, disclosing that Apple would receive a "broker fee" or "yield spread premium" ("YSP") in the amount of $4,545, over and above the $2,272 and various other fees that the plaintiffs had already paid to Apple at or before the closing.

Essentially, plaintiffs contend that this YSP, representing 1% of the mortgage loan amount, was a kickback or illegal fee paid by SIB to Apple for referring mortgage business to SIB at a higher-than-market interest rate. They assert that the YSP did not compensate Apple for any services that it performed since the Costas had already paid Apple a fee for all services rendered. Rather the YSP, according to the plaintiffs, allowed SIB to lock the Costas into a higher interest rate on their mortgage loan, a rate above the "par" rate that would have been quoted absent the YSP. They allege that every business day SIB had a practice of sending "rate sheets" to mortgage brokers with whom it did business, on which would be listed the interest rates that SIB was charging on a given day for the different loan programs it offers. (*See, e.g.,* Levine Aff., Exh. F.) Each base interest rate, plaintiffs allege, was given a price, with the par rate indexed to the price of 100. According to plaintiffs, the higher the interest rate, i.e., the more it exceeded the par rate, the higher

the price for the loan. A higher-priced loan, in turn, translated into a bigger payoff by SIB to the mortgage broker. As such, plaintiffs argue that the YSP paid by SIB to Apple in accordance with this pricing structure violates § 8(a) of RESPA, which provides:

(a) Business referrals

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607. They also contend that it was SIB's routine practice to charge such YSP's to other home purchasers as well. Consequently, plaintiffs seek certification of a class consisting of:

All persons residing in the United States and its territories who, during the period from July 31, 2000 to the present, obtained a federally related mortgage loan from defendant SIB in connection with which: (1) the mortgage broker was paid a fee(s) for its services from the "borrowers funds" and or the "sellers funds" at or prior to closing and (2) that SIB paid the mortgage broker a fee outside of closing ("POC").

(Pls.' Notice of Mot. and Mot. for Class Cert. at 1.) Defendant SIB argues that certification of a class would be improper in this case because, *inter alia,* questions of law and fact common to all class members do not predominate over those relating only to individuals. (Def. SIB's Opp'n to Pls.' Motion for Class Cert. at 2–3.) Defendant Apple argues as well that certification would be improper as to it on numerosity grounds. (Def. Apple's Mem. of Law in Opp'n to Pls.' Mot. for Class Cert. at 1–3.)

After reviewing each party's submissions and the relevant evidence, the court finds merit in SIB's position. Plaintiffs have failed to satisfy the predominance criterion needed to certify a class and, as such, class certification of this action is unwarranted.

## DISCUSSION

### (1) Class Certification Standard

To certify a proposed class, the plaintiff carries the burden of making the following showing:

(1) the class is so numerous that joinder of all members is impracticable (numerosity), (2) there are questions of law or fact common to the class (commonality), (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality), and (4) the representative parties will fairly and adequately protect the interests of the class (adequate representation).

Rule 23(a), F.R. Civ. P. Assuming the plaintiff satisfies each of the above necessary elements, he must also show "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3), F.R. Civ. P.

■ When a court is deciding a Rule 23 motion for class certification, the allegations of the complaint are accepted as true, *Shelter Realty Corp. v. Allied Maintenance Corp.,* 574 F.2d 656, 661 n. 15 (2d Cir.1978), and the merits of the underlying claims are not a consideration. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

■ At the same time, however, a court should not allow adherence of this last principle to prevent "rigorous analysis" of the factors involved in determining whether a plaintiff has carried his burden under Rule 23, F.R. Civ. P. *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990). Thus, the only issue to be resolved is whether the elements of Rule 23 have been satisfied, and any reference to plaintiffs' factual allegations should not be construed as findings of fact or conclusions of law with respect to the class certification issue before the court. *See German v. Federal Home Loan Mortgage Corp.,* 885 F.Supp. 537, 547 (S.D.N.Y.1995) (Sweet, J.).

### (2) Plaintiffs' RESPA Claims

When Congress enacted RESPA, it did so to give those home buyers obtaining federally related mortgage loans protection from "unnecessarily high settlement charges caused by certain abusive practices" such as kickback and referral fees. 12 U.S.C. § 2601(a). In doing so, Congress also provided a safe harbor whereby certain fees would be permissible, qualifying its earlier restrictions by stating in § 8(c) of RESPA:

> Nothing in this section shall be construed as prohibiting ... the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed.

12 U.S.C. § 2607(c)(2). Further elaboration appears in HUD Regulation X, 24 C.F.R. § 3500 et seq. ("Regulation X"). Regulation X provides, in pertinent part:

> If the payment of a thing of value bears no reasonable relationship to the market value of the goods or services provided, then the excess is not for services or goods actually performed or provided. These facts may be used as evidence of a violation of section 8 and may serve as a basis for a RESPA investigation. High prices standing alone are not proof of a RESPA violation.

24 C.F.R. § 3500.14(g)(2).

Relying, in chief, on the Eleventh Circuit's decisions in the *Culpepper* line of cases, plaintiffs argue that class certification is appropriate here. In *Culpepper v. Inland Mortgage Corp.*, 132 F.3d 692 (11th Cir.1998) ("*Culpepper I*"), the Court of Appeals held that payments made by the lender to various mortgage brokers could not be classified as payment for services because there was no evidence suggesting that the fee paid by the lender to the mortgage broker was in any way dependent on the type of services the broker provided since the broker presumably expended the same effort to originate an above-par loan as it did on a par or below-par loan. *Culpepper I,* 132 F.3d at 697.

The Eleventh Circuit would revisit the issue some years later in *Culpepper v. Irwin Mortgage Corp.*, 253 F.3d 1324 (11th Cir.

2001) ("*Culpepper III*"). In *Culpepper III*, the Court affirmed the lower court's certification of a class involving claimed RESPA violations.

After *Culpepper I*, Congress issued a conference report demanding that HUD clarify its position with respect to YSP's. HUD responded by issuing a policy statement on March 1, 1999 ("1999 Policy Statement") in which it announced that YSP's were not illegal per se and established a two-part test for determining their legality. *See* Real Estate Settlement Procedures Act (RESPA) Statement of Policy 1999–1 Regarding Lender Payments to Mortgage Brokers, 64 Fed.Reg. 10080 (1999). The first part of the test asks whether goods or services were actually provided for the compensation paid to the mortgage broker and the second part asks whether the compensation paid was reasonably related to the value of goods and services actually furnished.

At issue in *Culpepper III* was whether both parts of the test needed to be performed or whether the second part could be dispensed with once the court had determined that the lender had failed to comply with the first part. After weighing both approaches, the Court of Appeals embraced the latter view and held that § 8 liability could be established under the first prong of the reasonableness test alone by determining whether the broker provided some services and whether the YSP was payment for those services as opposed to a referral. *Culpepper III*, 253 F.3d at 1331. A court could make this determination, according to the Eleventh Circuit, by looking to the presumed intent of the lender in making payments and the fact that payments were based solely on the difference between the par interest rate and the rate of the mortgage loan obtained as well as the fact that the lender had no knowledge of the services performed by the mortgage broker. *Id.* at 1332. Under *Culpepper III's* interpretation, concerned only with the lender's general intent and the mechanics by which it calculates YSP's, i.e., whether it uses a rate sheet or some other predetermined formula, a court need not involve itself in the details of each individual transaction. Instead, similar questions of fact predominate

in the analysis, global determinations can be made, and class treatment is, therefore, appropriate.

In the aftermath of *Culpepper III,* HUD again weighed in on the issue of YSP's by issuing another policy statement on October 18, 2001 ("2001 Policy Statement"). *See* Real Estate Settlement Procedures Act Statement of Policy 2001–1: Clarification of Statement of Policy 1999–1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8(b), 66 Fed.Reg. 53052 (2001). In the 2001 Policy Statement, HUD expressly rejected the approach taken by *Culpepper III* to determining lender liability under RESPA. "HUD was not a party to the [*Culpepper III*] case and disagrees with the judicial interpretation regarding Section 8 of RESPA and the 1999 Statement of Policy." 2001 Policy Statement, 66 Fed.Reg. 53054–55. In particular, HUD emphasized that both parts of the HUD test needed to be completed before any determination could be made as to the legality of a YSP. 2001 Policy Statement, 66 Fed.Reg. 53055.

In the first part of the test, to gauge whether a YSP was compensation for goods or services provided, HUD underscored the necessity of looking at each transaction separately. In view of this level of scrutiny, it was impossible, according to HUD, to determine the legality of a YSP from the difference in interest rates listed on a rate sheet alone, in sharp contrast to the position advanced by *Culpepper III.* 2001 Policy Statement, 66 Fed.Reg. 53055. HUD's stance is that even though rate sheets are used to calculate YSP's, a YSP is by definition derived from the interest rate and it is the rare lender who is completely in the dark as to the services that the mortgage broker has performed on a given transaction. For HUD, the fact that a mortgage broker receives compensation for originating an above-par loan does not conclusively establish that such compensation is illegal because it is just as true that the YSP can encourage home ownership by allowing the home buyer to finance settlement costs through a higher interest rate. 2001 Policy Statement, 66 Fed.Reg. 53054.

As to the second part of the test, requiring that total compensation received by the mortgage broker be reasonably related to the total services provided, HUD took pains to clarify that YSP's represent just one component of total compensation and that the reasonableness determination should not, therefore, be made with respect to the YSP in isolation but should take into account all of the other fees and determine whether, in the aggregate, such fees were reasonably related to the complete package of services provided.2001 Policy Statement, 66 Fed.Reg. 53055. Moreover, while comparison to prices in similar markets is a significant factor in determining the reasonableness of fees, HUD also recognized that in less competitive markets it may be necessary to consider prices from a wider array of providers. 2001 Policy Statement, 66 Fed.Reg. 53055–56.

Given HUD's 2001 Policy Statement, it is not surprising that plaintiffs ask the court not to defer to its pronouncements for guidance on the issue of class certification in this matter. (*See* Pls.' Mem. of Law in Supp. of Mot. for Class Cert. at 24–37.) Plaintiffs marshal a battery of arguments to convince the court that the 2001 Policy Statement should be accorded no deference, ranging from the 2001 Policy Statement was not issued according to proper notice-and-comment procedures to the contention that it is unconstitutionally vague and contrary to RESPA's plain language. (*Id.*)

There is little doubt that the 2001 Policy Statement suffers from various shortcomings, foremost among them that the HUD test "allows for an easy post-hoc rationalization of any payment to a broker by a lender, so long as it is not wildly excessive or explicitly termed a 'referral fee.'" *Vargas v. Universal Mortgage Corp.,* No. 01 C 0087, 2001 WL 1545874, at *3 (N.D.Ill. Nov. 29, 2001). Nonetheless, this alone does not constitute compelling grounds for refusing to adhere to it. *See id.; Bjustrom v. Trust One Mortgage,* 178 F.Supp.2d 1183, 1195 (W.D.Wash. 2001) (despite skepticism over ability of HUD test to fully protect consumers, "the Court concludes that disagreement over effective policy is not enough to overcome the deference due to HUD's policy statement").

Moreover, upon closer inspection, plaintiffs' arguments for departing from the 2001 Policy Statement in favor of *Culpepper III's* approach to class certification do not withstand careful analysis. Plaintiffs argue that the 2001 Policy Statement should not be accorded any deference because it was not issued according to formal notice-and-comment procedures. (Pls.' Mem. of Law in Supp. of Mot. for Class Cert. at 26–27.) Under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 844–46, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), a court is obligated to give effect to an agency's regulation interpreting an ambiguous statute unless the agency's interpretation is arbitrary or contrary to the statute. However, plaintiffs rely on *Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) to argue that agency pronouncements in less formal formats such as mere policy statements or interpretative rules do not qualify for *Chevron* deference. (Pls.' Mem. of Law in Supp. of Mot. for Class Cert. at 26–27.) Their argument is virtually identical to the one made in *LaCasse v. Washington Mut.,* 198 F.Supp.2d 1255, 1262 (W.D.Wash. 2002), in which the plaintiffs also relied on *Christensen* to argue that *Chevron* deference was improper. As one of the few courts in the country to rule on the issue since the 2001 Policy Statement became effective, the court in *LaCasse* was not persuaded and its analysis is instructive here.

In *LaCasse,* the court noted that *Chevron* deference "may apply to a less formal agency interpretation 'when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.'" *LaCasse,* 198 F.Supp.2d at 1262 (quoting *United States v. Mead Corp.,* 533 U.S. 218, 226–27, 121

S.Ct. 2164, 150 L.Ed.2d 292 (2001)). Accordingly, even when an agency interpretation has not undergone a formal notice-and-comment process, "it may nevertheless be entitled to deference if there is 'some other indication of a comparable congressional intent.'" *LaCasse,* 198 F.Supp.2d at 1262 (quoting *United States v. Mead Corp.,* 533 U.S. 218, 227, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)). Such congressional intent is evident with respect to HUD's policy statements because they are issued pursuant to a grant from Congress. *See* 12 U.S.C. § 2617(a) ("The Secretary is authorized to prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of this chapter."). Moreover, pursuant to RESPA's implementing regulations, HUD's official policy statements appearing in the Federal Register have the force of law commensurate with a legislative rule. *See* 24 C.F.R. § 3500.4(a); *LaCasse,* 198 F.Supp.2d at 1262.[1]

Plaintiffs additionally argue that, by issuing the 2001 Policy Statement, HUD rejected the plain language of, and attempted to manufacture a reasonableness test that has no basis in, RESPA. (Pls.' Mem. of Law in Supp. of Mot. for Class Cert. at 30.) Arguments in this vein have also failed to receive a warm reception by courts. *See, e.g., Vargas,* 2001 WL 1545874, at *3 ("HUD's 'reasonableness requirement' was not made out of whole cloth; it is implicit in § 2607(c) which authorizes compensation for 'services actually performed.'"); *Bjustrom,* 178 F.Supp.2d at 1196 ("The Court cannot conclude that the 2001 policy statement is an impermissible interpretation of RESPA."); *LaCasse,* 198 F.Supp.2d at 1262–63 ("The plaintiffs believe that HUD's reasonableness test finds no support in the plain language of

---

1. Under *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), an agency's interpretation of a statute, even if not controlling, is entitled to some deference, depending on how thorough, reasoned, and consistent with earlier as well as later pronouncements the interpretation is. *Skidmore,* 323 U.S. at 140, 65 S.Ct. 161. As such, in this action the court would accord deference to the 2001 Policy Statement even if it viewed it as ineligible for *Chevron* deference.

*See Glover v. Standard Fed. Bank,* 283 F.3d 953, 962–63 (8th Cir.2002) ("applying either *Christensen* or *Skidmore,* we find that the Policy Statements issued by HUD reflect a reasoned view of a responsible agency which is consistent with the statute and the regulation and which constitutes a body of experience and informed judgment that this court may look to as determinative authority").

the statute. This argument misses the mark as well.").

Indeed, there is considerable evidence that HUD's reasonableness analysis is directly derived from RESPA's legislative history and regulations. Section 8(c) of RESPA carves out from liability "the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed." 12 U.S.C. § 2607(c)(2). While RESPA does not provide any means for determining whether a payment is exchanged "for" goods or services, *LaCasse,* 198 F.Supp.2d at 1263, Regulation X, as mentioned earlier, does provide some guidance on the topic, particularly, that "[i]f the payment of a thing of value bears *no reasonable relationship* to the market value of the goods or services provided, then the excess is not for services or goods actually performed or provided." 24 C.F.R. § 3500.14(g)(2) (emphasis supplied). Such language closely tracks the legislative history of § 8 which provides that § 8 "is not intended to prohibit the payment by title insurance companies, attorneys, lenders and others for goods furnished or services actually rendered, so long as the payment bears *a reasonable relationship* to the value of the goods or services received by the person or company making the payment." S.Rep. No. 93–866 (1974), *reprinted in* U.S.C.C.A.N. 6546, 6551 (emphasis supplied). *See also LaCasse,* 198 F.Supp.2d at 1263. As such, plaintiffs' argument that HUD's reasonableness test has no basis in RESPA is untenable.

Even before the passage of the 2001 Policy Statement or, for that matter, the 1999 Policy Statement, courts in this district have refused to certify a class involving claimed RESPA violations. In *Marinaccio v. Barnett Banks, Inc.,* 176 F.R.D. 104, 107 (S.D.N.Y.1997) (Brieant, J.), the court refused to certify a class because YSP's are not per se illegal and to determine the legality of YSP's paid in the case it would be necessary to examine the services performed in each of the approximately 6,700 loan transactions constituting the proposed class. Accordingly, the court held that it "sees no reason to depart from the rationale adopted by the overwhelming weight of case authority in this area—namely, that class action treatment is inappropriate for claims brought under section 8 of RESPA because individual factors predominate over common issues." *Marinaccio,* 176 F.R.D. at 108. Similarly, in *Conomos v. Chase Manhattan Corp.,* No. 97 Civ. 0909, 1998 WL 118154, at *4 (S.D.N.Y. Mar. 17, 1998) (Leisure, J.), taking guidance from *Marinaccio,* the court ruled that class treatment was inappropriate because case-by-case analysis, involving the evaluation of factors such as geographic market differences, the size and type of each loan, and the mortgage broker's expense structure, would be necessary to determine liability under RESPA.

A number of years earlier, in *Sicinski v. Reliance Funding Corp.,* 82 F.R.D. 730, 733 (S.D.N.Y. Pollack, J.), on which both *Marinaccio* and *Conomos* rely, the court decided that it would have to discern what services were rendered in each transaction and whether the compensation paid was reasonably related to those services, prompting the court to conclude "[i]n this inquiry, common questions certainly would not predominate." *Sicinski,* 82 F.R.D. at 733. In *Sicinski,* the court was confronted with 303 transactions yet still considered certification to be impracticable. Plaintiffs in this case contend that the class potentially includes members in the thousands, a number that dwarfs the class contemplated in *Sicinski,* making certification even more impracticable. (Pls.' Mem. of Law in Supp. of Mot. for Class Cert. at 13.) In addition, other district courts in the Second Circuit have similarly found certification infeasible. *See, e.g., Potchin v. Prudential Home Mortgage Co., Inc.,* No. 97–CV–525 (CBA), 1999 WL 1814612 (E.D.N.Y. Nov. 12, 1999).

The only Court of Appeals to consider the question of class certification, in the context of claimed RESPA violations, after *Culpepper III* and HUD's issuance of the 2001 Policy Statement, has been the Eighth Circuit. In *Glover v. Standard Fed. Bank,* 283 F.3d 953 (2002), the Court of Appeals ruled that class certification was improper. In so holding, the Eighth Circuit noted that the Eleventh Circuit had reached its decision by

deferring to its own earlier ruling in *Culpepper I* and had done so because it viewed the HUD Statement as being "silent" on the issue under consideration. [*See Culpepper III*, 253 F.3d at 1329.] Of course, now that the 2001 Policy Statement has effectively broken this silence, an argument can be made that any residual viability *Culpepper III* may have had is diminished. Suffice it to say that the Eighth Circuit in *Glover* took notice of this development and observed:

> We note, however, that for this case *Culpepper* [*III*] does not appear to be apposite precedent. The Eleventh Circuit, in its exercise interpreting HUD [1999] Policy Statement I, appears to have given at least some deference to HUD policy pronouncements. But, *Culpepper* [*III*] was considered and published prior to HUD's more recent Policy Statement of October 18, 2001, a policy that we believe is due either *Christensen* or *Skidmore* deference. As previously noted, the court in *Culpepper* [*III*] reached its final conclusion by finding HUD's two-part test 'ambiguous' thus leaving room for the court to inject its own interpretation of HUD's intent. The Eleventh Circuit has not stated its position regarding the deference due HUD [2001] Policy Statement II. We will not conjecture whether it will remain steadfast in its position regarding the ambiguity of HUD's Policy Statement now that HUD has clearly stated that it differs with the analysis made in *Culpepper* [*III*].

*Glover*, 283 F.3d at 964 n. 9. Accordingly, the court is inclined to adopt the approach to class certification embraced by *Glover*.

Finally, the fact that class certification is denied does not mean that individual plaintiffs will be left without recourse. RESPA provides for treble damages and attorneys fees, *see* 12 U.S.C. § 2607(d). Thus, individual plaintiffs will not be put at a disadvantage in moving forward with their RESPA claims. *See Glover*, 283 F.3d at 966 ("Congress, in its wisdom, fosters the guarantee of legal representation under RESPA on an individual basis by allowing for attorneys fees and costs as part of the prescribed recovery."); *Potchin*, 1999 WL 1814612, at *10; *but see Bjustrom*, 178 F.Supp.2d at 1195.

### (3) Defendant Apple's Opposition to Class Certification

In addition to defendant SIB's opposition to certification of a class in this action, defendant Apple argues that certification is improper as to it because plaintiffs have failed to satisfy the numerosity requirement of Rule 23(a), F.R. Civ. P. (Def. Apple's Mem. of Law in Opp'n to Pls.' Mot. for Class Cert. at 1–3.) Since the court has already ruled that certification of the class contemplated herein is inappropriate on other grounds, it does not reach the merits of defendant Apple's opposition based on numerosity.

### CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification pursuant to Rules 23(a) and (b), F.R. Civ. P. is denied. Plaintiffs' claims in their individual capacity are, of course, not affected by this ruling.

**IT IS SO ORDERED.**